[No. 18123. In Bank.—March 29. 1894.]

T. WILLIAMS ET AL., RESPONDENTS, v. MOUNTAINEER GOLD MINING COMPANY ET AL., RESPONDENTS, AND JOHN HAYES, APPELLANT.

MECHANIC'S LIEN—PART OF STRUCTURE.—A mechanic's lien cannot be claimed upon part of a structure, or upon a structure which is part of a larger structure, or part of an entire property.

ID.—STRUCTURES FOR USE OF MINING CLAIM.—A claim of lien for materials furnished for the construction of a mill, tramway, boarding-house, and reduction works upon a mining claim should be against the mining claim, and not against the specific structure upon the mine.

ID.—APPURTENANCE—ANTICIPATION OF FUTURE USE.—One contributing labor or materials to a structure which is an appurtenance to a mine, or which, when constructed, is to form part of it, must be held to have anticipated its future use, and cannot claim a lien upon the structure

upon the ground that the lien attached before its use in connection with the mine.

ID.—FORECLOSURE OF LIEN—TITLE TO MINING CLAIM.—In an action to foreclose a lien for materials furnished in the improvement of a mining claim against persons in possession of the premises, the lien claimant cannot dispute the title of the defendants; nor can title be tried in such form of action.

APPEAL from a judgment of the Superior Court of Sierra County, and from an order denying a new trial.

The facts are stated in the opinion.

*Frank R. Wehe,* for Appellant.

The statute provides for a lien on a "structure" as separate and distinct from a "mining claim." (Code Civ. Proc., sec. 1183.) The mill was not appurtenant to the quartz mine until used with it. (*Quirk* v. *Falk,* 47 Cal. 455.) The lien of appellant relates to the time of commencing to furnish the lumber. (Code Civ. Proc., sec. 18.) The lien had to be filed only against the property for which the lumber was furnished. (Code Civ. Proc., secs. 1183, 1185; *Williams* v. *S. C. Mining Assn.,* 66 Cal. 197.) The lien is primarily on the mill and buildings erected, and incidentally on the land. (Phillips on Mechanic's Liens, sec. 12.)

*F. D. Soward,* for Respondents Williams *et al.*

A lien cannot be had on part of the structure, or on property which the law treats as a unit. (Phillips on Mechanics' Liens, sec. 202; *Cox* v. *W. P. R. R. Co.,* 44 Cal. 28; *Willamette S. M. Co.* v. *Kremer,* 94 Cal. 210–11; *Dickenson* v. *Bolyer,* 55 Cal. 285, 286.) A mine is a structure, and the lien must extend to the whole claim. (*Helm* v. *Chapman,* 66 Cal. 292; *Silvester* v. *Coe Quartz Min. Co.,* 80 Cal. 510; *Dickenson* v. *Bolyer,* 55 Cal. 285, 286.) A mechanic's lien is strictly statutory. (Phillips on Mechanics' Liens, sec. 178.)

*Haven & Haven,* for Respondent Johns.

The COURT.—Upon further consideration of this cause in Bank, we are satisfied with the conclusion

which was reached by Department One in its opinion filed November 8, 1893, and for the reasons stated in said opinion the judgment and order appealed from are affirmed.

De Haven, J., did not participate in the foregoing decision.

The following is the opinion of Department One above referred to:

Temple, C.—The general nature of this case is well stated in the first finding of facts, which is as follows: "The defendant, the Mountaineer Gold Mining Company, a corporation, at all the times referred to in the pleadings in the cause was the owner and in the possession of and working a certain mine known as the Berger or Mountaineer quartz mine, situate in said Sierra county, and consisting of some seven contiguous mining locations, four of which are quartz mining locations and three placer mining locations, with their respective appurtenances.

"The plaintiff, T. Williams, and twenty-four others commenced a joint action July 28, 1891, to foreclose certain miners' liens respectively, which had heretofore been filed against said property for labor performed thereon at various periods, dating from the 9th of October, 1890, to the 11th of July, 1891; T. Berger was also a party plaintiff to this action, but the suit as to him was subsequently dismissed.

"Prior to the commencement of last-named action, to wit: on April 28, 1891, John Hayes had brought an action against said defendant corporation to foreclose a mechanic's lien, filed against the 'Mountaineer reduction works, tramway, and flume,' situate on the 'Lake Placer claim,' one of the locations above referred to.

"The Hayes lien was filed for record February 2, 1891, and was for lumber and materials furnished by said Hayes between July 20 and December 31, 1890, to be used in the construction of the said reduction works, etc.

"The action of T. Williams *et als.* and that of Hayes were by order of court consolidated August 24, 1891.

" On September 26, 1891, Stephen Tippett and four others brought suit against defendant corporation similar to the Williams suit, and to foreclose liens against the same property. Three of these liens were for labor performed on said property from May 25 to July 11, 1891, and one of them for materials claimed to have been furnished between January 1 and July 11, 1891, to be used on said mining property.

" This last action was by order of the court, made October 5, 1891, consolidated with the two actions previously consolidated as aforesaid.

" The reduction works or quartz-mill on and connected with said mining property were completed January 4, 1891.

" Robert Forbes is made a party to the action as one claiming ownership to a certain rock-breaker and amalgamating-pan attached to said mill by means of bolts, etc.

"William Johns is made a party to the action as one claiming ownership to certain mining machinery attached to said quartz-mill. The Johns claim is based on a chattel mortgage, covering said mining machinery, duly executed on behalf of the then owners of said Mountaineer quartz mine on the fifteenth day of October, 1890. The property claimed to be covered by the mortgage is described therein as 'certain machinery' for quartz milling, consisting of ten battery stems, ten tappets, ten sockets, ten cams, one cam shaft, two mortars, two challenge feeders, one Knight water-wheel, shafting and pulleys belonging to wheel, all to be put into, and made a part of, the mill of the mortgagors at the Mountain mine, in Butte township, Sierra county, California.

" H. Scammon is made a party to the suit as one claiming an interest in all the property in suit, by reason of an attachment levied thereon as the property of

defendant corporation, which attachment was duly levied on the eleventh day of July, 1891."

Judgment was entered in favor of plaintiffs and sustaining the lien of Johns, but against the claim of the appellant, who appeals from the judgment and an order refusing him a new trial.

It will be seen that there are some thirty claimants of liens upon the mine for labor performed mostly in the tunnel, but also in a variety of other employments about the mine, and that the work was done at different periods.

Appellant commenced to furnish materials for the construction of the mill, tramway, boarding-house and other buildings July 21, 1890, and filed his claim of lien on February 2, 1891. Two of the plaintiffs commenced work before he filed his claim of lien, but all the others commenced work after his claim of lien was filed and many after he had commenced his action to foreclose his lien. The plaintiffs in the third action on behalf of lien claimants commenced their work after the plaintiffs in the second suit had filed their notice of lien. It is obvious at once that this state of things could not exist in a case for the foreclosure of liens for labor and material used in the construction of a building under contract.

The most important question in the case arises from the fact that appellant only claims a lien upon the reduction works, and filed his notice and claim of lien accordingly, while the plaintiffs in the two suits seek to establish liens upon the whole mining claim, including the reduction works, and described it all in their notice and claim of lien.

They contend that the mill, tramway, boarding-house and other structures described in appellant's notice and claim of lien constitute a part only of the property for the improvement of which Hayes furnished lumber, and that he cannot have a lien upon a part only of the structures or property constructed, altered, or improved. The trial court sustained this view.

Section 1183 of the Code of Civil Procedure, so far as material here, is as follows:

"Mechanics, materialmen, contractors, subcontractors, artisans, architects, machinists, builders, miners, and all persons and laborers of every class, performing labor upon or furnishing materials to be used in the construction, alteration, or repair, either in whole or in part, of any building, wharf, bridge, ditch, flume, aqueduct, tunnel, fence, machinery, railroad, wagon-road, or other structure, shall have a lien upon the property upon which they have bestowed labor or furnished materials, for the value of such labor done and materials furnished . . . . and any person who performs labor in any mining claim or claims has a lien upon the same, and the works owned and used by the owners for reducing the ores from such mining claim or claims, for the work or labor done, or materials furnished," etc.

The use of the phrase "other structure" in the above extract shows that the word "structure" comprehends all the properties specifically enumerated, and is broad enough to include any similar thing constructed, should the enumeration prove incomplete. Following this with the language "and any person who" it would seem to show that a mining claim was not included in the structures upon which liens were allowed. And the procedure provided for acquiring liens upon structures are not, in all respects, applicable to those claiming liens upon mining claims. They cannot all date back to the commencement of the work. On a mine the work is always going on; may have commenced before the laborers were born, and may continue indefinitely. There is no special thirty days, therefore, within which lienors must record their notices and claim of lien.

The labor cannot generally be said to have contributed to the creation of the property, or added to its value; on the contrary, it may diminish its value—perhaps render it valueless.

The code does not seem to have provided for all the cases which may arise in regard to liens upon mining

claims. We can only follow the procedure so far as applicable. For that purpose the mining claim must stand in the place of the structure as the property to be charged with the lien. It is the property which should be described in the notice and claim of lien under section 1187. There can be no harm in so speaking of it if we do not lose sight of essential differences, when it is necessary to discriminate.

Appellant contends that he furnished materials for the structures he has described in his notice of lien, and under section 1183 he is entitled to a lien upon the property for which he has furnished materials. He therefore insists that although a lien might have been had upon the whole mine—which, however, he does not concede—he is entitled to charge the very structures he has contributed to make for the value of his materials.

The same sort of argument might have been made for those who worked in the tunnel had they sought to acquire a lien upon the tunnel only, and those who worked on the ditch and flume had they sought a lien upon those structures only. In such case had each of the supposed liens been foreclosed, and the structures sold to different purchasers and the mine to another, each purchaser might have found himself the owner of property utterly valueless without the other parts. They were all parts of one entire property, and we cannot suppose, unless the language of the statute compels such conclusion, that such a result was contemplated.

One who has built a chimney in a house, or a porch, or a doorstep, has helped to build a structure, to wit: a chimney, a porch, or doorstep; but he cannot acquire a lien upon these specific structures, and by detached sales destroy the value of the claims depending upon liens upon the whole house. A structure may be a part of another larger structure, and in reference to it constitute but a part of a structure. In such cases it is well settled the lien must cover the entire structure. It was so held in *Cox* v. *Western Pacific R. R.*, 44 Cal. 28. See, also, *Farmers' Loan and Trust Co.* v. *Candler*, 87

Ga. 241, in which the following language is quoted with approbation: "A railroad with its depots, bridges, and other appurtenances, is no less an entirety than a dwelling-house with its kitchen, its chimneys, and its door-steps; and yet no one has ever supposed that a mechanic's lien could be enforced against the doorsteps or chimneys of a dwelling-house, or that they could be sold and removed, to the utter destruction of the whole property." In that case it was also said, "a verdict and judgment attempting to set up and enforce a lien upon a specified portion of a railroad are void upon their face." (See, also, *Midland Railway Co.* v. *Wilcox,* 122 Ind. 84.)

In the case at bar the tramway extends to the mouth of the tunnel. To sell it, with a convenient space around it, would be to deprive the owners of the tunnel, and yet not give the tunnel to the purchaser. What would be a convenient space around a structure which can never be of use as a structure? All these structures, severed from the mine, would be valueless as structures.

The question has, I think, been decided by this court. In *Dickenson* v. *Bolyer,* 55 Cal. 285, work had been done upon a dwelling-house situate upon a mining claim, and also upon a tunnel and other portions of the mining claim. Objection was made that the claim of lien filed did not designate the amount and value of the work done on the dwelling-house, and the amount and value of the work done on the tunnel, as required by section 1188 of the Code of Civil Procedure. The court said: "It"—the section—"plainly applies only to cases in which one claim is filed against two or more *separate and distinct* buildings, mining claims, or other improvements owned by the same person, and not to a case where, as here, all the work was performed upon one and the same piece of property, although upon different portions of it." In *Helm* v. *Chapman,* 66 Cal. 291, it was said a mine or pit may be called a structure, and "section 1183 does not, it is true, provide for a lien upon mines, but upon 'mining claims.' The lien, if it exists at all, extends to the whole claim. Strictly speaking, of course, a mining

claim cannot be constructed, altered, or repaired. The intention of the lawmakers seems to have been to give a lien upon the whole claim for labor performed on and for materials furnished for and used in any structure, or on or in the mining claim." In *Silvester* v. *Coe Min. Co.*, 80 Cal. 510, a contractor had been employed "to erect hydraulic power hoisting-works and pumping-works building, gallows-frame, and track, lay down a water-pipe, to supply water to the mine, and to pump out the mine to the third level." It was contended that the statute did not give the contractor a lien on the mining claim, but only on the structure he had contracted to construct, alter, and repair, and that his notice and claim of lien being against the mine, and not against the specific structures, were invalid. It is said: "The lien given by the statute is upon the mining claim as a whole, and not upon the separate pieces of work done in its repair. (Code Civ. Proc., sec. 1183.) The mine is a structure within the meaning of the statute. (*Helm* v. *Chapman*, 66 Cal. 291.) The work done in this case became and was a part of the mining claim, and the whole claim, including the added improvements, was subject to the lien. (Civ. Code, sec. 661.) Therefore, the notice of lien, as against the mining claim, was valid."

This is a distinct ruling to the effect that a claim of lien for materials furnished, to be used in a building upon a mining claim, should be against the mining claim and not against the specific structure upon the mine.

Appellant further contends that his lien attached before the mill was used in connection with the mine, and before, therefore, it became an appurtenance under section 1183 of the Code of Civil Procedure, or section 661 of the Civil Code. As his lien attached at the time the mill was commenced, it, of course, antedates its use. But I think, in this case, the mill is not a mere appurtenance for the mine. It is upon the mining claim and like the tunnels, tramways, and roads, is a part of the

mine.   But conceding it to be an appurtenance, I think this reading of the code too literal.   This is to stick in the bark.   One contributing labor or materials to a structure must be held to have anticipated its future use.   It is necessary to do this in many cases in order to determine what the structure is upon which he is entitled to a lien.   A drain to a house may be an appurtenance before either is used.   I think the statute would cover a thing as an incident which was exclusively adapted to the use of the principal before actually used.

It is further objected that the title to that portion of the mining claim upon which the mill was located was not acquired until after his lien attached.

Appellant found the corporate defendant in possession of the premises, claiming it all as its mining claim, and furnishing materials to improve its claim; in this action he cannot dispute its title.   Title cannot be tried in this form of action.

If these views are correct, appellant has no lien, and is not interested in the other points made.

I advise that the judgment and order be affirmed.