Argued 21 February; decided 5 May, 1900.

### WATSON *v.* NOONDAY MINING COMPANY.

[55 Pac. 867, 58 Pac. 36, 60 Pac. 994.]

ADVERSE PARTY—SERVING NOTICE OF APPEAL.

1.  In a case where a property owner appeals from a decree foreclosing several liens of equal rank the lienors are not adverse parties, as between themselves, so that one of them can have the appeal dismissed because the appellant failed to serve the notice on another of such lienors; for, if the decree is affirmed, the lienors are unaffected, while, if the liens of the claimants who were notified shall be defeated, the unnotified lienors are better off than before the appeal—and they will not be heard to object that another claimant was not served.

APPEAL BOND—WITHDRAWAL OR RELEASE.

2.  When a bond has been filed and become a part of the appeal record, the court will not undertake to release the sureties thereon or affect the rights and liabilities of the respective parties thereto on an interlocutory motion.

MECHANIC'S LIEN—MINE NOT A STRUCTURE.

3. A mine or mining claim is not a "structure" within the meaning of Section 3669, Hill's Ann. Laws, which confers the right to a lien for material or labor used in any structure, so that a mill and a tramway thereto from a mine are structures by themselves, and a lien may be enforced against them without reference to the mine: *Williams* v. *Toledo Coal Co.* 25 Or. 426, cited.

MECHANIC'S LIENS—JUDGMENT AGAINST OWNER.

4. The decree in this case, though it may seem to be personal against the property owner for the amount of the contractor's debts, is not so when closely examined.

DECREE EXCEEDING SUM DUE ON THE CONTRACT.

5. In a mechanic's lien case the decree may under some circumstances be given for an amount exceeding the balance due the contractor: Hill's Ann. Laws, § 3678.

From Douglas :   J. C. FULLERTON, Judge.

Decided 23 January, 1899.

ON MOTION TO DISMISS APPEAL.

*Messrs. Andrew M. Crawford* and *John W. Whalley*, for the motion.

*Messrs. F. W. Benson* and *O. P. Coshow, contra.*

PER CURIAM.   This suit was brought in the Circuit Court of Douglas County by J. Frank Watson to foreclose certain material men's liens on a mining claim in that county, belonging to the defendant, the Noonday Mining Co.   The John A. Roebling's Sons Co., a foreign corporation, was made a defendant, under the allegation that it had or claimed some interest in or lien upon the mine, but that such interest or claim was subsequent to and subject to plaintiff's lien.   It answered, denying that its claim or lien was subsequent to that of plaintiff, and setting up a lien for materials furnished by it to the contractor and agent of the Noonday Mining Co., which it alleges is superior to the lien of plaintiff.   The Noonday Mining Co. answered, putting in issue the validity of both liens ; and a trial resulted in a decree establishing

the liens of both these parties, and directing the sale of the mining property, and the distribution of the proceeds among them. From this decree the Noonday Mining Co. appealed, by serving a notice thereof in Douglas County upon the resident attorney of the plaintiff, and in Multnomah County upon the attorneys of Roebling's Sons Co., who are residents of such county.

1. The plaintiff now moves to dismiss the appeal, on the ground that the Roebling's Sons Co. is an adverse party, and that service of the notice of appeal upon its attorney in Multnomah County is not sufficient to confer jurisdiction. Conceding the soundness of the latter position for the purposes of this motion, and assuming that no appeal has been taken from the decree of the court below establishing the lien of Roebling's Sons Co., the motion of the plaintiff is, nevertheless, not well taken, because the Roebling's Sons Co. is not an adverse party on such appeal, within the meaning of the rule sought to be invoked. Its interests are not in conflict with a reversal or modification of the decree so far as the plaintiff is concerned. Its rights would not be injuriously affected if defendant should prevail on this appeal, and the decree establishing plaintiff's lien should be reversed, but, on the contrary, it would be benefited thereby. In such case the security for the payment of its lien would be increased, and it would not be compelled to share with the plaintiff in the proceeds of the property upon which it is claiming a lien. Its lien was established by decree of the court below, and the property decreed to be sold thereunder; and, unless the Noonday Mining Co. has perfected an appeal from such decree, it is conclusive upon the rights of the parties, and can in no way be affected by the appeal which has been taken from the decree establishing the plaintiff's lien. If, upon the hearing in this

court, the decree in favor of plaintiff shall be affirmed,
the interests of Roebling's Sons Co. will not be affected;
and if it is reversed, and the complaint dismissed, then
in such case said company would be benefited by the ap-
peal; so that, whatever may be the rule in reference to
the service of a notice of appeal under the circumstances
disclosed by this record, the plaintiff cannot take advan-
take of any defect therein so far as the attempted appeal
from the decree in favor of Roebling's Sons Co. is con-
cerned; and plaintiff's motion to dismiss must be over-
ruled.                                    MOTION OVERRULED.

Decided 31 July, 1899.

ON MOTION FOR LEAVE TO WITHDRAW AN APPEAL BOND.

*Mr. O. P. Coshow*, for the motion.

*Messrs. John W. Whalley, Andrew M. Crawford*, and *Wm.
R. Willis, contra.*

PER CURIAM.    2. This is a motion for leave to with-
draw from the files of this court an undertaking on ap-
peal, and for an order releasing the sureties thereon.
When the appeal was taken, an undertaking was filed for
all damages, costs and disbursements which might be
awarded on the appeal, and, as the appellant supposed
and was advised, for a stay of proceedings also.   There-
after the respondent caused an execution to be issued,
and upon a hearing relating thereto before the circuit
judge it was decided that the undertaking was not suffi-
cient to stay proceedings, and thereupon the appellant
caused to be filed an amended undertaking on appeal,
and for a stay of proceedings also, and now desires to
withdraw the one first filed.   But we do not think the
motion therefor should be allowed.   These undertakings
are voluntary obligations, and are a part of the record

in the case, and we ought not to determine, or seem to determine, the rights of the sureties on the respective undertakings as among themselves, or their liability to the respondent, upon a motion of this character. The motion is therefore denied.     MOTION OVERRULED.

Decided 5 May, 1900.

## ON THE MERITS.

This is a suit by J. Frank Watson to foreclose the liens of certain material men. The transcript shows that the defendant, the Noonday Mining Co., a corporation, being the owner of a mine in Douglas County, Oregon, entered into a contract with the Hammond Manufacturing Co., a corporation, in fulfilling which the latter erected for it a stamp mill, and built a tramway from the mill to the mine, procuring material therefor from the parties and of the value following, to wit: Smith & Watson Iron Works, $2,223.81; Goldsmith & Loewenberg, $351.93; San Francisco Novelty & Plating Works, $286.89; William Isensee, $343.57; Gutta Percha & Rubber Manufacturing Co., $903.03; Lakin & Lee, $148.68; Goodyear Rubber Co., $178.69; and Henshaw, Sewell & Cowston, $574.01. The parties furnishing such material not having been paid therefor, filed liens against the mill and tramway and the Noonday Mining Co.'s interest in the premises on which such improvements were made, and thereafter assigned their claims to plaintiff, who commenced this suit to foreclose the liens, alleging that the defendants, the John A. Roebling Sons Co., a corporation, Al. Parker, Daniel M. Tracy, and Charles F. Morse claimed some interest in said premises, but that such interest was subordinate to his liens. The Noonday Mining Co. demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of suit, and

that it failed to give a description of the property sought
to be charged with the liens sufficient for identification ;
but, the demurrer having been overruled, it filed an an-
swer, denying, upon information and belief, the material
allegations of the complaint.   The John A. Roebling's
Sons Co. filed an answer denying that its claim was sub-
ordinate to plaintiff's liens, and, alleging that it furnished
to the Hammond Manufacturing Co. material of the value
of $1,284.65, to be and which was used in making said im-
provements, and not having been paid any part thereof,
filed a lien therefor against the mill, tramway, and the
land upon which they are situated and the land connected
therewith as a mine, to the extent of the Noonday Mining
Co.'s interest therein, and prayed that its lien might be
foreclosed.   The other defendants having made default, a
trial was had, resulting in a decree foreclosing said liens,
and directing that the mill and tramway and the land upon
which they are situated be sold to satify the amounts
found to be due, and the Noonday Mining Co. appeals.

                                            AFFIRMED.


For appellant there was a brief over the names of *F.
W. Benson* and *Coshow & Sheridan*, with an oral argu-
ment by *Messrs. Benson* and *O. P. Coshow*.

For respondent Watson there was a brief and an oral
argument by *Messrs. John W. Whalley, Wm. R. Willis,
Andrew M. Crawford,* and *Edw. B. Watson*.

For Roebling's Sons Co. there was an oral argument
by *Mr. Harry M. Cake*.

3.   It is contended by appellant's counsel that a mine
is included within the meaning of the word "structure,"
as used in the mechanic's lien law (Hill's Ann. Laws, §
3669), in the light of which a mill, tramway and mine

are connected and inseparable, the entirety of which precludes a lien for material used in building the mill or tramway from attaching to either separate from the mine; that, plaintiff's assignors not having included the mine connected with the mill by the tramway in their notices of liens, the court erred in decreeing a foreclosure thereof; and that the failure of the liens and of the complaint in this respect was not waived by answering over after the demurrer was overruled. In support of the position for which they contend, counsel cite the cases of *Helm* v. *Chapman*, 66 Cal. 291 (5 Pac. 352), and *Williams* v. *Mountaineer Gold Min. Co.* 102 Cal. 134 (34 Pac. 702, 36 Pac. 388), in which it was held, in the first case, that a mine or pit sunk in a mining claim was a structure, and in the second, that a claim of lien for materials furnished for the construction of a mill, tramway, boarding house and reduction works upon a mining claim should be against such claim, and not against the specific structures on the mine. The general statute of California respecting liens of mechanics and others upon real property, which was construed by the supreme court of that state in the cases to which our attention has been called, provides that "any person who performs labor in any mining claim or claims has a lien upon the same, and the works owned and used by the owners for reducing the ores from such mining claim or claims, for the work or labor done or materials furnished by each respectively:" Code Civ. Proc. Cal. § 1183. It will thus be seen that the Legislatively Assembly of California, in enacting a lien law, has treated the mine and the reduction works, when owned and operated by the same party, as real property which is benefited by the labor performed upon or the material used in the improvement of either the mill or the mine; and whether the supreme court of that state, in construing such statute, properly

held that the mill and the mine and the tramway connecting them constituted an entirety, it is not necessary for us to consider.

The legislative assembly of this state evidently did not consider that the word "structure," as used in the general lien law (Section 3669, Hill's Ann. Laws), included a mine or mining claim, for at the same session at which said section was amended, a separate act was passed securing liens on mining claims : Laws, 1891, p. 76. Section 1 of said act provides : "That every person who shall do work or furnish materials for the working or development of any mine, lode, or mining claim or deposit yielding metals or minerals of any kind, or for the working or development of any such mine, lode, or deposit in search of such metals or minerals ; and to all persons who shall do work or furnish materials upon any shaft, tunnel, incline, adit, drift, or other excavation, designed or used for the purpose of draining or working any such mine, lode, or deposit, shall have a lien upon the same, to secure to him the payment of the work or labor done or materials furnished by each respectively which shall attach in every case to such mine, lode, and deposit, and though such shaft, tunnel, incline, adit, drift, or other excavation be not within the limits of such mine, lode, or deposit." In *Williams* v. *Toledo Coal Co.* 25 Or. 426 (42 Am. St. Rep. 799, 36 Pac. 159), it was held, in construing this section, that no lien could attach for labor performed in constructing a wagon road where it did not appear, either in the notice of lien or in the complaint in a suit to foreclose the same, that such wagon road was an incline or excavation used for the purpose of working the mine. The reduction of ore near the mines from which it is taken must, by saving the cost of transportation, necessarily benefit the mine owner to the extent of the expense thus saved, but such reduction, however beneficial it may prove when accom-

plished near the mine, cannot be regarded as the working
or development thereof, within the meaning of the act in
question, so as to give a lien on the mine for material
furnished in constructing or for labor performed in oper-
ating the mill.   The building of a tramway from a mine
to a stamp mill probably cheapens the cost of transport-
ing ores, but such tramway is constructed as a means to
facilitate the operation of the mill, and not for the pur-
pose of working or developing the mine which supplies
ore to the mill; and as it is the labor performed or ma-
terial furnished for the working or development of a mine
that creates a lien, which attaches to the mine or mining
claim, we are unable to perceive, from the character of
the improvement, any material difference between the
tramway and a wagon road used for the same purpose.
The statute of this state respecting liens on mines and
mining claims, when compared with the statute of Cali-
fornia on that subject, will show that they are quite dis-
similar, and, in our judgment, the mine, mill, and tram-
way, under our statute, do not constitute such an entirety
as to render a lien for material used in erecting the mill
and in constructing the tramway void because such lien
was not filed against the mine also.

4.   It is maintained that a personal judgment has been
erroneously rendered against the Noonday Mining Co.
upon contracts to which it was not a party for the value
of material furnished to the Hammond Manufacturing
Co.   The statute makes every contractor having charge
of the construction of any building or improvement for
another the agent of the owner for the purposes of the
mechanic's lien law:  Hill's Ann. Laws, § 3669.   The
Hammond Manufacturing Co. having entered into a con-
tract with the Noonday Mining Co. for the building of the
mill and tramway, made the owner thereof a party to
each contract entered into between the Hammond Manu-

facturing Co. and such lien claimants for material used in making such improvement under the maxim, "*Qui facit per alium facit per se.*"    The court decreed, in effect, that plaintiff and the John A. Roebling's Sons Co. have and recover from the Noonday Mining Co. the respective sums demanded by them, and directed that the mill and tramway and the interest of the Noonday Mining Co. in the land upon which such improvements are situated be sold to satisfy said sums found to be due each respectively, and if, after paying the amounts thus awarded, any surplus of the proceeds of the sale of such property remain, that the same should be paid to the Noonday Mining Co., its successors or assigns ; but the decree contains no provision for an execution against its other property in case of deficiency.    Notwithstanding the recital therein with respect to the sums found to be due plaintiff and the defendant the John A. Roebling's Sons Co. may have the appearance and partake of the form of a personal judgment, an examination of the tenor of the decree, considered in its entirety, conclusively shows that such was not the intention of the court in rendering it.

5.    It is insisted that no decree can be rendered against the owner of the property charged with a lien in excess of the contract price of the improvements made thereon ; that our mechanic's lien law was copied from the California statute, and, having been so construed in that state prior to its adoption here, our statute should receive the same construction ; and, this being so, the complaint failed to state facts sufficient to constitute a cause of suit in not alleging that the amount demanded by the lien claimants was due from the Noonday Mining Co. to the Hammond Manufacturing Co.    The point contended for is without merit, for, while the legislative assembly of this state passed an act December 22, 1853, section 11

of which provided, in effect, that the owner of a building should not be liable to a lien claimant for labor performed upon or material furnished to a contractor or employer in any greater sum than that due from the owner to such contractor or employer (Gen. Laws, p. 653, as compiled by Matthew P. Deady and Lafayette Lane), such act has been amended, and now provides that no payment made by the owner to any contractor before the expiration of thirty days from the completion of the structure shall be valid for the purpose of discharging any lien, unless such payment has been distributed among those who have labored upon or furnished material to be used in such structure :  Hill's Ann. Laws, § 3678.   No defense having been made as to the merits of the lien claims, the decree is affirmed.   Affirmed.