[L.A. No. 28821.   In Bank.   Apr. 18, 1967.]

R. D. REEDER LATHING CO., INC., Plaintiff and Respondent, v. FRANCIS E. ALLEN, JR., Defendant and Appellant.

George Magit and Richard A. Perkins for Defendant and Appellant.

Mantalica, Barclay & Teegarden and Lewis C. Teegarden for Plaintiff and Respondent.

TRAYNOR, C. J.—Defendant appeals from a summary judgment for plaintiff in an action to foreclose a mechanic's lien. The judgment decreed that defendant was personally liable to plaintiff for the value of the labor and materials it supplied and impressed the improved property with mechanic's liens.

The part of the judgment that defendant is personally liable to plaintiff is clearly erroneous. In the absence of a contract between a lien claimant and the property owner, the right to enforce a mechanic's lien against real property does not give rise to personal liability of the owner. (*Golden Gate Bldg. Materials Co.* v. *Fireman* (1928) 205 Cal. 174, 177-178 [270 P. 214] ; *Roberts* v. *Security Trust & Sav. Bank* (1925) 196 Cal. 557, 573-584 [238 P. 673].) Although the complaint states that plaintiff performed its work at the request of defendant, it appears from plaintiff's own affidavits that the request came, not from defendant directly, but from his prime contractor.

The complaint alleged that plaintiff supplied lathing materials and performed labor, for which it had not been paid, in the construction of houses on 18 separate lots owned by defendant. In an amended answer defendant denied that plaintiff had performed the work alleged and set up affirmative defenses of waiver and estoppel.

Plaintiff then filed its motion for summary judgment (Code Civ. Proc., § 437c), supported by the affidavit and declaration of its president, Robert D. Reeder, and the declaration of Robert M. Thomas, a materialman. Defendant filed counteraffidavits.

In considering a motion for summary judgment the trial court must determine whether the defendant has by affidavit presented any facts that give rise to a triable issue. (*Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785] ; *Eagle Oil & Refining Co.* v. *Prentice* (1942) 19 Cal.2d 553, 555 [122 P.2d 264].) The court does not resolve conflicting factual allegations, for the purpose of the procedure is to discover whether the parties have evidence requiring assessment at a trial. Such summary procedure is drastic and should be used with caution so that it does not become a substitute for trial. (*Towne Development Co.* v. *Lee* (1965) 63 Cal.2d 147, 148 [45 Cal.Rptr. 316, 403 P.2d 724] ; *Stationers Corp.* v. *Dun & Bradstreet, Inc., supra*; *Desny* v. *Wilder* (1956) 46 Cal.2d 715, 725-726 [299 P.2d 257] ; *Coyne* v. *Krempels* (1950) 36 Cal.2d 257, 260-261 [223 P.2d 244] ; *Eagle Oil & Refining Co.* v. *Prentice, supra*, at p. 556.) Accordingly, the affidavits of the moving party are strictly construed and those of his opponent, even if in conclusionary terms, are liberally construed. Summary judgment is proper only if the

affidavits in support of the moving party are sufficient to sustain a judgment in his favor and his opponent does not by affidavit show facts sufficient to present a triable issue.

Examination of the affidavits in this case shows that plaintiff has established for purposes of its motion that it performed the claimed work on defendant's houses and that it has not been paid. It did the work pursuant to a contract with the prime contractor for the lathing and plastering, West Valley Plastering, Inc., which is now bankrupt. The critical issue is whether plaintiff has waived its lien or is estopped to assert it.

Defendant contends that plaintiff conspired with West Valley to keep defendant ignorant of plaintiff's contribution to the construction so that defendant would be unable to protect himself against plaintiff's potential lien. According to defendant's affidavits, toward the end of 1962 West Valley was experiencing difficulty getting finances to carry on its business. In disregard of West Valley's weak financial condition and relying for security primarily on its access to lien rights, plaintiff offered West Valley extended credit in exchange for West Valley's agreement to subcontract all its lathing work to plaintiff. West Valley agreed to those terms and also that plaintiff "would either furnish WEST VALLEY with labor lien releases signed in blank, or permit WEST VALLEY to prepare its own labor releases, which WEST VALLEY could then in turn complete as progress payments became due from buildings and owners, thereby permitting WEST VALLEY to receive its money when due. In this connection, [plaintiff] would provide WEST VALLEY with a list of all lathers employed by [plaintiff] so that West Valley, in turn, could type in the names of said lathers for the purpose of completing the labor lien releases. . . ." Defendant makes further allegations from which a trier of fact might infer that Thomas Building Supply Co., which was the only materialman on the job to whose existence defendant had been alerted, was aiding plaintiff in carrying West Valley on the shaky credit basis by providing the materials that plaintiff supplied defendant. A trier of fact might also infer that plaintiff had a financial interest in Thomas Building Supply Co., which was later reorganized into Deering Building Co. by the president of plaintiff and the president of Thomas Building Supply Co.

Thus, defendant seeks to prove a scheme whereby plaintiff extended imprudent credit without bearing the risk itself but

counting on the lien law to leave the risk on the unsuspecting and innocent property owner. To further the scheme, plaintiff and West Valley had to conceal plaintiff's existence and identity from defendant, else he would demand a lien waiver from plaintiff before paying West Valley, thus destroying either plaintiff's secret security or West Valley's advantageous credit arrangement. In support of his allegations defendant filed affidavits by himself and his attorney and declarations by Addis Johnston and Raymond J. Croteau, formerly the president and vice-president of West Valley. The Johnston and Croteau declarations had been prepared for use in a different lawsuit. After the trial court granted plaintiff's motion for summary judgment, defendant moved for reconsideration and supplied declarations of Johnston and Croteau prepared specifically for the case at bench, setting out substantially the same facts as their other declarations. Defendant's motion was denied.

These affidavits raise triable issues of fact in regard to estoppel. ■ Estoppel may be invoked against a liening materialman when he gives the contractor a waiver of lien, a false receipt of payment, or a promise to look only to the contractor for his money, to induce payment from the owner. (E.g., *E. K. Wood Lumber Co.* v. *Higgins* (1960) 54 Cal.2d 91, 94 [4 Cal.Rptr. 523, 351 P.2d 795]; *Ware Supply Co.* v. *Sacramento Savings & Loan Assn.* (1966) 246 Cal.App.2d 398, 408-409 [54 Cal.Rptr. 674]; *J. & W. C. Shull* v. *Doerr* (1930) 110 Cal.App. 613, 615-616 [294 P. 464].) ■ After giving the contractor a receipt for payment a materialman's failure to inform the owner that the contractor's checks to him were dishonored also gives rise to an estoppel. (*Jaekle* v. *Halton* (1938) 25 Cal.App.2d 706 [78 P.2d 441].) ■ "Waiver of [or estoppel to assert] mechanic's lien rights does not require a formal contract, but may be inferred from the circumstances and the conduct of the parties." (*E. K. Wood Lumber Co.* v. *Higgins, supra,* at p. 94; see also *Goodwin Tile & Brick Co.* v. *DeVries* (1944) 234 Iowa 566, 569 [3 N.W.2d 310, 155 A.L.R. 346]; *Detroit Graphite Co.* v. *Carney* (1935) 175 Okla. 583 [53 P.2d 584, 586].)

■ Given the alleged secret contract between plaintiff and West Valley, plaintiff's familiarity with the contracting business and its alleged knowledge that defendant was relying on lien releases supplied by West Valley in authorizing payments, plaintiff had a duty to speak, and its silence supports an inference of guile. (See Code Civ. Proc.,

§ 1962, subd. 3, now Evid. Code, § 623; *California Lettuce Growers, Inc.* v. *Union Sugar Co.* (1955) 45 Cal.2d 474, 483 [289 P.2d 785, 49 A.L.R.2d 496]; *People* v. *Ocean Shore R.R., Inc.* (1948) 32 Cal.2d 406, 421 [196 P.2d 570, 6 A.L.R.2d 1179]; *American Bldg. etc. Co.* v. *Indemnity Ins. Co.* (1932) 214 Cal. 608, 617-618 [7 P.2d 305]; *Bruce* v. *Jefferson Union High School Dist.* (1962) 210 Cal.App.2d 632, 634 [26 Cal. Rptr. 762]; *Dettamanti* v. *Lompoc Union School Dist.* (1956) 143 Cal.App.2d 715, 721 [300 P.2d 78]; *Balestreiri* v. *Arques* (1942) 49 Cal.App.2d 664, 669 [122 P.2d 277]; *Merry* v. *Garibaldi* (1941) 48 Cal.App.2d 397, 401, 403 [119 P.2d 768].)

■■■ " 'While the essential purpose of the mechanics' lien statutes is to protect those who have performed labor or furnished material towards the improvement of the property of another [citation], inherent in this concept is a recognition also of the rights of the owner of the benefited property. It has been stated that the lien laws are for the protection of property owners as well as lien claimants. . . .' " (*Borchers Bros.* v. *Buckeye Incubator Co.* (1963) 59 Cal.2d 234, 239 [28 Cal.Rptr. 697, 379 P.2d 1] [quoting from *Alta Bldg. Material Co.* v. *Cameron* (1962) 202 Cal.App.2d 299, 303 [20 Cal.Rptr. 713]]; *William H. Birch & Co.* v. *Magic Transit Co.* (1903) 139 Cal. 496, 498-499 [73 P. 238].)

■■■ The only fact to which plaintiff points to contradict defendant's allegations of inequitable suppression of information is relevant, not to plaintiff's role in setting the trap for defendant, but to the reasonableness of defendant's reliance on the nonexistence of the facts plaintiff conspired to conceal. At the bottom of one of the vouchers defendant used to authorize payments from his construction lender appears the notation "RELEASE FROM LATHER MUST ACCOMPANY." Plaintiff contends that this notation indicates that defendant knew that a lathing contractor was involved and that he was therefore not ignorant of the true facts. Defendant replies, with dictionary and technical citations,[1] that a lather is a workman, not a contractor, and that lien releases from all workmen did accompany the vouchers. Plaintiff's contention presents a question of fact. What defendant understood by the notation

---

[1]Webster's New International Dictionary (2d ed.); 1 Dictionary of Occupation Titles (3d ed. 1965) Lather, Code No. 842,781, Division of Manpower Administration, Bureau of Employment Security, U.S. Department of Labor; Directory of National and International Labor Unions in the United States, 1965, Bull. No. 149, Bureau of Labor Statistics, U.S. Department of Labor.

on the voucher is a question defendant is entitled to have answered by a trier of fact. ▮ The office of a motion for summary judgment is merely to ferret out fact issues, not to resolve them. (*Stationers Corp.* v. *Dun & Bradstreet, Inc., supra,* 62 Cal.2d 412, 417; *Eagle Oil & Refining Co.* v. *Prentice, supra,* 19 Cal.2d 553, 555.)

▮ Plaintiff contends that defendant could have protected himself against potential liens that would force him to pay twice for the same work or suffer the loss of his property by requiring the contractor to take out a bond to cover the defaults of those with whom he contracts. This precaution is permitted by Code of Civil Procedure section 1185.1, subdivision (d). The statute does not make it mandatory for the owner to require a bond from the contractor, however, and we find no basis for holding that the owner's right to demand a bond precludes an equitable estoppel when he does not do so. Several factors discourage the home builder from demanding a bond of his contractor (see Barnard, *Limitation of Owner's Liability for Mechanics' Liens* (1964) 16 Hastings L.J. 179, 184; Comment (1964) 16 Hastings L.J. 198, 199), and there is some evidence—including the fact that the same bankruptcy by the contractor that precipitated this case also resulted in at least 14 other suits to foreclose liens—that it is the general practice in the industry for the owner to forego requiring a bond. (See Gaulden & Dent, *More on Mechanics Liens, Stop Notices and the Like* (1966) 54 Cal.L.Rev. 179, 204-205; Hearing of the Senate Interim Judiciary Committee, August 20-21, 1956, at 112-114, cited in Comment (1963) 51 Cal.L.Rev. 331, 356, fn. 194; Third Progress Report to the Legislature by Senate Interim Judiciary Committee, 1955, pp. 85, 87-88.)

▮ Whether defendant was reasonable in not requiring West Valley to take out a bond or whether his failure to do so should preclude him from invoking estoppel is another question defendant is entitled to have tried.

Plaintiff contends, finally, that we cannot consider the Johnston and Croteau declarations since they were filed in a different case. We find no authority on using affidavits filed in another action. ▮ Since summary judgment is a drastic remedy and should not be granted if there is any showing of a triable issue, it should not be granted merely because opposition affidavits were borrowed from a different case. Such affidavits are as persuasive of the existence of evidence that could be produced as affidavits of the same potential witnesses specifically prepared for the case at bench. More-

over, defendant produced such affidavits in support of a motion for reconsideration, and it was an abuse of discretion for the court to deny that motion.

The judgment is reversed.

McComb, J., Peters, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

Respondent's petition for a rehearing was denied May 17, 1967.