[Civ. No. 9564. Fourth Dist., Div. One. May 19, 1970.]

A. A. BAXTER CORPORATION, Plaintiff and Appellant, v.
HOME OWNERS & LENDERS, Defendants and Respondents.

726

**COUNSEL**

Gray, Cary, Ames & Frye, Frederick P. Crowell and Terry D. Ross for Plaintiff and Appellant.

Wenke, Pilskaln, Kemble & Marx and W. Patrick O'Keefe, Jr., for Defendants and Respondents.

**OPINION**

**COUGHLIN, J.**—Plaintiff, a grading and excavating contractor, appeals from that part of a judgment denying foreclosure of an asserted mechanic's lien upon property owned by those defendants who were homeowners of and lenders having liens on a part of the property described in the claim of lien.

The action arose out of two contracts; one under date of December 12, 1963, for excavating and grading an undeveloped tract of land, described as the West one-half of Pueblo Lot No. 1786, PUEBLO LANDS OF SAN DIEGO, owned by Harbor Crest, a partnership; and the other under date of March 9, 1964, for the construction of storm drains on that tract.

Harbor Crest planned development of the whole tract. The initial development contemplated a three-unit subdivision of a portion of the tract to be known respectively as Harbor Crest Unit No. 1, consisting of 32 lots, Harbor Crest Unit No. 2, consisting of 14 lots and Harbor Crest Unit No. 3, consisting of 46 lots. As a part of the preliminaries to this development, Harbor Crest applied for and obtained a special land development permit from the City of San Diego issued February 13, 1964, authorizing the excavating, grading and storm drain work covered by the two contracts with plaintiff. The Subdivision Map Act (Bus. & Prof. Code, § 11500 et seq.) and chapter 10, article 2, division 2 of the San Diego Municipal Code (§ 102.0200 et seq. San Diego Mun. Code) prescribe the procedures incident to filing and recording a subdivision map. These statutes provide, in substance, the property owner intending to subdivide shall file a tentative map with the planning department; upon approval of this map and compliance with designated prerequisites shall submit a final map to the city engi-

neer; prior to any construction of improvements or land development shall submit detailed plans and specifications thereof and enter into a contract with the city to make, install and complete them within a fixed time; but, in the event he desires to do certain work prior to entering into such an agreement, may make an application to do so under a special permit which shall be accompanied by plans describing the work proposed. The city engineer may issue such a permit providing a bond is posted in an amount assuring the rehabilitation of the land, including grading and planting, in the event the subdivision map is not recorded. When the special permit is for all work required in connection with the subdivision and the work has been completed, the agreement with the city to make, install and complete such work is not required. Where the required work has been completed or the subdivider executes the agreement to do that work and other prerequisites have been complied with, the city council shall accept the map and authorize its recording. The special permit obtained by plaintiff to do the excavating, grading and storm drain work in question was issued pursuant to the foregoing statutes.

Pertinent to the issue at bench is a chronology of the events following execution of the contracts by plaintiff and Harbor Crest. The work required thereby was performed under the special permit during the period February 14, 1964, through June 5, 1964. On June 25, 1964, plaintiff sent Harbor Crest its final invoice showing the total sum payable under the contracts was in excess of $254,000 of which there was then unpaid $125,028.82. On November 24, 1964, an inspector, acting on behalf of the city engineer, made a final inspection of the work to be done under the special permit and initialed the permit indicating the work had been completed. On January 28, 1965, final subdivision maps for Harbor Crest Units 1, 2 and 3 were approved. On the same date, preliminary to such approval, Harbor Crest executed an agreement with the city to make, install and complete all of the improvements and land development on the subdivision sites in accord with the plans theretofore submitted with the proposed maps. The evidence shows this agreement was directed primarily to work other than that performed under the two contracts by plaintiff under the special permit. The subdivision maps were recorded March 1, 1965. Thereafter defendant homeowners purchased lots in Unit 3, and defendant lenders made loans secured by an appropriate lien on those lots. On October 20, 1965, the city filed a notice of completion on Unit No. 1, and on September 8, 1966, filed a notice of completion on Unit No. 2, indicating compliance by Harbor Crest with the provisions of the subdivision agreement respecting those two units. A notice of completion formally accepting Unit No. 3 had not been filed up to time of trial. On March 28, 1967, plaintiff filed a claim of lien against Lots 47 through 96 inclusive of Harbor Crest Unit No.3 and the

north one-half of the west one-half of Pueblo Lot No. 1786, PUEBLO LANDS OF SAN DIEGO, being that part of the original tract owned by Harbor Crest not included within the subdivision. Noteworthy is the omission from the claim of lien of any of the property in Harbor Crest Units Nos. 1 and 2.

The work done by plaintiff under the two contracts and the special permit consisted in grading, excavating and storm drain construction on the land eventually constituting Harbor Crest Units Nos. 1, 2 and 3 and also on parts of the adjoining land in the tract.

Plaintiff sought a personal judgment against Harbor Crest for the sum of $52,628.82; that this amount be adjudged a lien upon all of the land described in their claim of lien; and that this lien be foreclosed. Defendant homeowners and lenders by their answer asserted the claim of lien was ineffective because not filed within the time prescribed by law; that plaintiff attempted to place the burden of payment for the work performed under its two contracts upon the owners of Harbor Crest No. 3 and the property not subdivided in spite of the fact those contracts pertained to the development of Harbor Crest Units Nos. 1, 2 and 3, and the property not subdivided; that plaintiff was estopped to assert its lien; and that plaintiff was guilty of laches. The court decreed recovery by plaintiff of the sum of $52,028.82 from Harbor Crest; denied foreclosure of plaintiff's asserted mechanic's lien against the interest of defendant homeowners and lenders in the property described in that lien; and made no disposition respecting the asserted lien upon the property of Harbor Crest, i.e., the property not subdivided. Plaintiff appeals only from that part of the judgment in favor of the defendants, homeowners and lenders.

The court found and the evidence supports the finding A. Alan Baxter is president and sole shareholder of plaintiff A. A. Baxter Corporation and also a limited partner in Harbor Crest; the work of improvement performed by plaintiff under its contracts with Harbor Crest constituted a separate work of improvement as defined in section 1184.1 of the Code of Civil Procedure; this work was performed under the special permit and was completed in a manner acceptable to the city engineer on November 24, 1964; subsequent to completion of the work on November 24, 1964, plaintiff was aware of the fact Harbor Crest was developing the land upon which the work had been performed into a subdivision, that residential dwellings were being constructed thereon, that these dwellings were being sold to defendant homeowners, and that defendant lenders were extending loans secured by deeds of trust on the land; the claim of lien filed by plaintiff did not specify what portion of the amount due it for such work was allocable to Unit No. 3; plaintiff did not submit proof of the reasonable value of the work performed on Unit No. 3 but only submitted proof of the total amount owing for

work performed on Units 1, 2 and 3 as well as the land not subdivided; and although the work under said contracts had been completed on November 24, 1964, plaintiff did not take any action to assert its right to a lien until filing its claim of lien on March 28, 1967.

The court concluded plaintiff's claim of lien had not been filed within the time prescribed by section 1193.1 of the Code of Civil Procedure; under the San Diego Municipal Code work performed under a special permit is deemed completed when acceptable to the city engineer; the signing of the special permit by the agent of the city engineer signified the work performed under the permit was completed in a manner acceptable to the city engineer and constituted an acceptance of the work by the City of San Diego; plaintiff's delay from November 24, 1964, until March 28, 1967, in asserting its claim of lien was unreasonable and prejudicial and, under the equitable doctrine of laches, plaintiff is barred from asserting any claim of lien; and plaintiff's claim of lien was insufficient because the reasonable value of the work performed on Unit No. 3 was not stated or proved.

There is evidence supporting the conclusion Mr. Baxter had knowledge Harbor Crest was experiencing financial difficulties; nevertheless plaintiff did not assert its claim of lien on the subdivision property which would have foreclosed acceptance of the subdivision maps, but permitted the maps to be filed and the property therein to be sold to persons having no knowledge of its claimed right to a lien; on September 15, 1965, plaintiff entered into an agreement with Harbor Crest allowing its lien rights on the property in Unit No. 1 to expire without filing a lien in consideration of an agreement to pay and an assignment to it by Harbor Crest of a minimum of $900 from every lot sale escrow on Harbor Crest Units Nos. 1, 2 and 3 until the sum of $58,028.82 and accrued interest of $8,172.82, together with interest on the unpaid balance was paid in full; the sum of $5,400 was paid under this agreement; and it was further provided therein Harbor Crest would delay acceptance of Unit No. 2 and Unit No. 3 until the aforementioned sums were paid in full, and in the event payments were not made as prescribed by the agreement on Units No. 2 and 3, or acceptance thereof occurred, prior to payment of said sums, plaintiff should exercise its right to file a lien on Units 2 and 3. Execution of the foregoing agreement under the circumstances noted supports the conclusion plaintiff and Harbor Crest contemplated the sale of lots in the subdivision and the subjection of the lots in Units 2 and 3 to a secret claim of lien by plaintiff by manipulating the time within which plaintiff believed it might file a claim of lien.

We conclude the judgment should be affirmed because (1) plaintiff's claim of lien against only a part of the tract upon which the work under its contracts has been performed is not authorized by the mechanic's lien statute; (2) its claim of lien was not filed within the time prescribed by the

statute; and (3) relief properly was denied under principles of estoppel and laches.

■ Plaintiff was entitled to a claim of lien for the work performed under its two contracts by virtue of section 1184.1 of the Code of Civil Procedure which provides "Any person who, at the instance or request of the owner . . . of any lot or *tract of land,* grades, fills in, or otherwise improves the same, . . . has a lien upon said lot or *tract of land* for his work done and materials furnished." (Italics ours.) The right to a lien thus conferred is distinct from but similar to that conferred by section 1181 of the Code of Civil Procedure which provides that all persons performing labor upon or furnishing materials to be used in the construction, alteration, addition to or repair of any building, structure or other work of improvement shall have a lien upon the property upon which they have bestowed labor or furnished materials. As these liens are the creatures of statute the objects thereof are limited to those designated by the statute. (*Davis* v. *Mac-Donough,* 109 Cal. 547, 550-551 [42 P. 450].) Thus, a lien under section 1181 may not be claimed upon a part of a structure as distinct from the whole structure. (*Bringham* v. *Knox,* 127 Cal. 40, 43 [59 P. 198]; *Williams* v. *Mountaineer Gold Min. Co.,* 102 Cal. 134, 139-142 [34 P. 702, 36 P. 388]; *Willamette Steam Mills Co.* v. *Kremer,* 94 Cal. 205, 210, 211 [29 P. 633]; *Cox* v. *Western Pac. R. R. Co.,* 47 Cal. 87, 89; *Cox* v. *Western Pac. R. R. Co.,* 44 Cal. 18, 28.) By analogy the object of the lien conferred by section 1184.1 is the "tract of land" graded or otherwise improved; is the entire tract; and is not a part of the tract. (*Warren* v. *Hopkins,* 110 Cal. 506, 511 [42 P. 986].) ■ The right of a contractor to claim a lien upon an entire tract may be limited by his waiver of the lien upon a portion of the tract. (*B. & J. Constr. Co.* v. *Spacious Homes, Inc.,* 204 Cal.App.2d 216, 222 [22 Cal.Rptr. 41].) The application of equitable principles dictates such a result. Proceedings for the foreclosure of a mechanic's lien are proceedings in equity in which the court will apply equitable principles. (*Laubisch* v. *Roberdo,* 43 Cal.2d 702, 709 [277 P.2d 9]; *Hendrickson* v. *Bertelson,* 1 Cal.2d 430, 434 [35 P.2d 18]; *Curnow* v. *Happy Valley Blue Gravel etc. Co.,* 68 Cal. 262, 264 [9 P. 149].) Where work is performed on an entire tract there is a difference between limiting enforcement of the contractor's lien to a part of the tract and permitting the contractor to claim a lien upon only a part of the tract, particularly where, as in the case at bench, the owners of the part of the tract upon which the contractor claims a lien became such after the work was completed and before the claim of lien was filed. ■ When defendants, homeowners and lenders, made their purchases and loans they were entitled to rely upon the assumption any claim of lien by a contractor for grading the entire tract would be upon the entire tract; would not be limited to the lots in Harbor Crest Unit No. 3;

and, in any event, would not subject their property to more than a proportionate share of the amount of the claimed lien. (*Hendrickson* v. *Bertelson, supra,* 1 Cal.2d 430, 434; *Cook* v. *Cappellino,* 101 Cal.App. 77, 78-79 [281 P. 412].) ■ Even assuming the claim of lien filed by plaintiff effectively subjects defendants' property to liens for apportioned shares of the amount unpaid plaintiff on its contracts with Harbor Crest, plaintiff did not seek such relief; instead, sought to subject the whole of defendants' properties to the whole of the unpaid amount due it; and neither the pleadings nor the proof in the case would support a judgment decreeing foreclosure on an apportionment basis.

■ Plaintiff actually completed the work of improvement described in its contracts on June 5, 1964. However, the trial court found the work of improvement encompassed within those contracts was subject to acceptance by the City of San Diego; the completion of that work for lien filing purposes, by virtue of section 1193.1, subdivision (e) of the Code of Civil Procedure, was deemed to be the date of such acceptance; acceptance occurrred when the inspector initialed the special permit under which the work had been performed, indicating its completion on November 24, 1964; a claim of lien, by virtue of section 1193.1, subdivision (c) of the Code of Civil Procedure, to be effective, should have been filed within 90 days after November 24, 1964; and the claim of lien filed on March 28, 1967, was ineffective. Both parties agree the work was subject to acceptance by the city. Plaintiff contends the acceptance was that required by the subdivision improvement agreement between Harbor Crest and the City of San Diego under date of January 28, 1965; acceptance of the work under that agreement has not taken place; lacking such acceptance completion of the work has not occurred; and, for this reason, its claim of lien was filed within the time prescribed by section 1193.1, subdivision (c), i.e., within 90 days after completion of the work. Defendants contend, and the court concluded, the acceptance was that required by the special permit under which it was performed, rather than by the subdivision improvement agreement. The latter position is well taken. ■ A work of improvement is "subject to acceptance" by governmental authority within the contemplation of section 1193.1, subdivision (e) only when required by legislative enactment. (*Howard A. Deason & Co.* v. *Costa Tierra Ltd.,* 2 Cal.App.3d 742, 750 [83 Cal.Rptr. 105].) The subdivision improvement agreement did not subject the work described in plaintiff's contracts with Harbor Crest to acceptance by the city because those contracts were executed and the work performed thereunder before that agreement existed. Neither the Subdivision Map Act nor the municipal code requires the execution of a subdivision improvement agreement before the performance of any work incident to filing and recording a subdivision map. The San Diego Municipal Code specifically

authorizes a prospective subdivider to do a part of the work incident to the creation of a subdivision before entering into a subdivision improvement agreement with the city; provides for the doing of such work under a special permit issued by the city engineer; and conditions issuance of a permit upon posting a bond "which would assure the rehabilitation of the land, including grading and planting, in the event the subdivision map does not record." (San Diego Mun. Code § 102.0224.) These provisions of the Municipal Code and the evidence in the case support the conclusion a subdivision development may be abandoned although the work performed under a special permit actually has been completed. Thus, acceptance of such work by the city under a subdivision improvement agreement may never be required. At the most, the work performed under a special permit requires only the approval of the city engineer. Whether such a requirement is the equivalent of acceptance of the work by the city is of no consequence in the case at bench. If the work performed under the special permit was "subject to acceptance" by a governmental authority, within the meaning of section 1193.1, subdivision (e) of the Code of Civil Procedure, it was because of the provision of law requiring approval by the city engineer; the city engineer approved; and the date of such approval was the date of acceptance deemed to be the date of completion.

Defendants presented the issues of estoppel and laches by their answer. The findings of the court did not set forth specifically each of the elements of estoppel. The conclusion of law drawn by the court declares plaintiff is barred from asserting any claim of lien under the equitable doctrine of laches, but makes no reference to the doctrine of estoppel. ■ However, the facts found and those established by undisputed evidence support an application of both doctrines. Plaintiff, through its president and sole stockholder, knew of the financial insecurity of Harbor Crest but withheld filing its claim of lien. Plaintiff's president and sole stockholder was a limited partner in Harbor Crest, and his financial interests in the partnership would be subserved by withholding any public assertion of plaintiff's right to a mechanic's lien. Plaintiff's contracts with Harbor Crest provided: "Terms of payment are cash, payable every two weeks." If plaintiff had insisted upon payment as provided by its contract and upon nonpayment had asserted its claim of lien the subdivision map would not have been accepted by the city; the lots in the subdivision would not have been subjects for sale; defendant homeowners would not have purchased and improved those lots; and defendant lenders would not have loaned money on them. By remaining silent respecting its claim of lien plaintiff, acting through its president and sole stockholder, preserved the latter's interest in Harbor Crest without jeopardizing his sole ownership interest in plaintiff. The net result of the manipulation in which plaintiff engaged, through its president and sole

stockholder, if successful, would have been to preserve the financial integrity of Harbor Crest at the cost and expense of defendants homeowners and lenders. The purpose of the mechanic's lien statute is the protection of property owners as well as lien claimants. (*R. D. Reeder Lathing Co.* v. *Allen,* 66 Cal.2d 373, 379 [57 Cal.Rptr. 841, 425 P.2d 785].) Plaintiff's course of conduct was inequitable and justified denial of relief. (See *R. D. Reeder Lathing Co.* v. *Allen, supra,* 66 Cal.2d 373, 378; *Cummings* v. *Kearney,* 141 Cal. 156, 160 [74 P. 759].) Plaintiff's contention the doctrine of laches is not applicable because its action was commenced within the statutorily prescribed period is without merit. ■ The court was entitled to consider the delay in filing a claim of lien as a basis for denying equitable relief to foreclose that lien in light of the circumstances in the case supporting the conclusion plaintiff used its delay to advance its financial interests and that of its president and sole stockholder at the expense of defendants homeowners and lenders.

The judgment is affirmed.

Brown (Gerald), P. J., and Whelan, J., concurred.