*806
 
 Opinion
 

 DUNN, J.
 

 Plaintiff appeals from a summary judgment entered in favor of defendant American National Insurance Company in a class action plaintiff filed against American, Budget Financial Corporation and Budget Finance Plan.
 

 The action was brought to recover a portion of credit insurance premiums allegedly refunded by American to Budget pursuant to the provisions of group credit life and group credit disability insurance policies which American issued to Budget, and under which plaintiff and the other members of the class became insured upon borrowing money from Budget and paying premiums for coverage under the group policies.
 

 The complaint alleged: defendants Budget Financial Corporation and its subsidiary, Budget Finance Plan, are licensed personal property brokers under the laws of California; defendant American is an insurance company authorized to transact, and transacting, business in California; beginning in 1959 American issued to Budget various policies of group credit life and group credit disability insurance which provided that persons borrowing money from Budget could become insured thereunder against the contingency of death or disability, or both, with regard to their indebtedness to Budget; when a borrower was included as an insured under the group policy, he was charged a premium which was added to the amount of his loan, and he received a certificate from American indicating that he was insured under the master policy issued to Budget; the class represented by plaintiff included all persons who borrowed money from Budget after 1959 and became insured under the master policy upon paying the required premium; at all times the claim and loss experience of American with regard to the group credit insurance written for Budget was favorable and, “during each of the years dealt with herein,”
 
 [1]
 
 American returned a sum of money to Budget in the form of “dividends” or “premium refunds”; substantially all of the premiums were paid by plaintiff class, and the premium refunds exceeded Budget’s contributions and expenses of administering the policies; therefore, under Insurance Code sections 10214 and 10270.65, the sums were the property of the members of the class; the entire amount of each of the premium refunds paid by American to Budget was retained by Budget for its own use and was not paid to, or applied for the benefit of, the class, as required by sections 10214 and 10270.65.
 

 It was further alleged: defendants participated in a “common plan”
 
 *807
 
 whereby Budget deliberately procured credit insurance from American at excessively high rates, and American refunded a substantial portion of the premiums to Budget as an incentive for transacting business with American; thus the refunds constituted unlawful rebates or “kickbacks”; American knew that such payments exceeded the expenses of Budget in administering the insurance, that Budget therefore was entitled to only a small portion of the payments, and that it would retain the entire payments for its own use to the exclusion of plaintiff and his class; as an insurance carrier, American owed plaintiff class a duty to protect its interests under the policy and the law; American violated this duty by paying premium refunds to Budget with knowledge that Budget would keep the sums so paid for its own benefit.
 

 Pursuant to leave of court, plaintiff filed an amendment to the complaint alleging: Budget was authorized by plaintiff class to purchase credit insurance on its behalf; therefore, in purchasing the insurance Budget was acting as the “agent and fiduciary” of the class, and in such capacity had a duty to obtain credit insurance at the lowest possible rate; instead, Budget sought out the highest rate as part of the plan to make a profit for itself at the expense of plaintiff class; Budget was acting as agent for American by collecting the premiums from the class members and remitting the premiums to American; the acts of Budget in receiving and retaining profits from American were within the scope of its agency; therefore American, as principal, was responsible for the wrongful acts of Budget.
 

 Based upon the foregoing allegations plaintiff, on behalf of himself and all members of the class, sought judgment for $100,000 compensatory damages
 
 [2]
 
 and $100,000 punitive damages.
 

 American and Budget filed answers denying all allegations of the complaint and the amended complaint. These answers also pleaded affirmative defenses, including various statutes of limitation. Thereafter, American moved for summary judgment. (Code Civ. Proc., § 437c.) Supporting and opposing declarations were filed. The motion was granted and summary judgment was entered in favor of American.
 
 [3]
 
 On this appeal, plaintiff contends that American “failed to controvert all causes of action alleged in the complaint.” By this statement, appellant apparently means that the declarations filed in support of the motion did not set forth facts
 
 *808
 
 sufficient to entitle respondent to judgment in its favor as to each of the various theories of recovery set forth in the complaint.
 

 Appellant sought recovery, first, on the theory that under Insurance Code sections 10214 and 10270.65 he and the class members were entitled to all of the premium refunds paid by respondent to Budget except that portion which represented Budget’s contributions and costs of administering the credit insurance program. Section 10214 provides: “If hereafter any dividend is paid or any premium refunded under any policy of group life insurance heretofore or hereafter issued, the excess, if any, of the aggregate dividends or premium refunds under such policy over the aggregate expenditures for insurance under such policy made from funds contributed by the policyholder, or by an employer of insured persons or by union or association to which such insured persons belong, including expenditures made in connection with the administration of such policy, shall be applied by the policyholder for the benefit of such insured employees generally or their dependents or insured members generally or their dependents.” Section 10270.65 contains identical provisions with respect to a policy of group disability insurance.
 

 Appellant also sought recovery on theories which may be summarized as follows: (1) respondent violated its duty to appellant by charging excessive rates for credit insurance, and by failing to see that Budget paid members of the insured class their rightful share of the premium refunds; (2) Budget acted as respondent’s agent in administering the credit insurance program, and therefore respondent was liable for Budget’s allegedly wrongful act of withholding premium refunds from the class; and (3) respondent and Budget engaged in a conspiracy whereby unlawful rebates were paid by respondent to Budget.
 

 Among other affidavits submitted by American in support of its motion for summary judgment was that of W. L. Harlan, which stated, preliminarily, that: from September 15, 1966, to July 1970
 
 [4]
 
 he was the manager of respondent’s credit insurance division; in this position he had charge of the issuance and administration of all group policies of credit life and credit disability insurance issued by respondent; in the course of performing these duties, affiant had acquired personal knowledge of the facts set forth, and if sworn as a witness he could testify competently to such facts. Mr. Harlan then stated: respondent issued several group policies of credit life and credit disability insurance to Budget Finance Plan; these policies
 
 *809
 
 contained the following identical provisions: “Premium rates may be subject to readjustment at the end of each policy year in accordance with the Company’s experience rating plan. Any reduction in premium rates may be made retroactive for the previous year and a consequent refund of premium for that year may be paid to the Creditor”; pursuant to this provision respondent paid Budget an experience rating refund each year from 1967 to 1970, inclusive; all group credit life and credit disability insurance policy and certificate forms issued by respondent to Budget, and the premium rates to be used in connection therewith, were filed with and approved by the Insurance Commissioner pursuant to Insurance Code section 779.1 et seq.; the commissioner set the maximum premiums which could be charged for coverage under the group policies; respondent did not know nor has it any information concerning the costs or expenditures of Budget in connection with its administration of the group policies; there never was any agreement or understanding between respondent and Budget as to the application, disposition or retention by Budget of any of the money paid to it by respondent as experience rating refunds.
 

 These statements were adopted in a supporting affidavit of J. P. Rulien, who became senior vice president of respondent’s credit insurance division in July 1970. Mr. Rulien stated: since that date he had been in charge of the issuance and administration of all group policies of credit life and credit disability insurance issued by respondent; in the performance of his duties he had acquired personal knowledge of the circumstances set forth in Mr. Harlan’s declaration, and such circumstances prevailed from July 1970 to May 6, 1971, the date his affidavit was made.
 

 Code of Civil Procedure section 437c provides in part: “. . . if it is claimed the action has no merit ... on motion of [the defendant] . . . supported by affidavit of any person or persons having knowledge of the facts ... the complaint may be dismissed and judgment may be entered, in the discretion of the court unless the other party, by affidavit or affidavits shall show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue of fact. . . . The affidavit or affidavits in support of the motion must contain facts sufficient to entitle . . . defendant to a judgment in the action, and the facts stated therein shall be within the personal knowledge of the affiant, and shall be set forth with particularity, and each affidavit shall show affirmatively that affiant, if sworn as a witness, can testify competently thereto.”
 

 The affidavits in support of the motion meet both the procedural and substantive requirements of section 437c. They were made by persons who, by reason of their respective positions with respondent, were in a
 
 *810
 
 position to have personal knowledge of the facts stated, and such facts were sufficient to entitle respondent to a judgment in its favor.
 

 Thus, under the provisions of the master policies, any refunds of credit insurance premiums were to be paid to Budget, not to appellant or to members of the class he purported to represent. A policy of group insurance is a contract, and the rights and duties of the parties thereto are governed by the provisions of the master policy. (See
 
 Boseman
 
 v.
 
 Insurance Co.
 
 (1937) 301 U.S. 196, 202-203 [81 L.Ed. 1036, 1039-1040, 57 S.Ct. 686, 110 A.L.R. 732].) Therefore,, where the master policy expressly provides that premium refunds or dividends are to be paid to the policyholder, the individual members of the group insured under the policy have no right to receive such payments from the insurer.
 
 (Slattery
 
 v.
 
 Pullman Co.
 
 (1959) 38 Del.Ch. 387 [153 A.2d 575, 577].) If, under Insurance Code sections 10214 and 10270.65, Budget was required to pay appellant a portion of the premium refunds received from respondent, American, nevertheless respondent would have no liability to appellant because of Budget’s alleged refusal to pay appellant.
 

 Respondent had no knowledge of the amounts of Budget’s administrative expenses, and thus was not in position to know whether Budget was entitled to retain for itself the entire sum refunded. Contrary to appellant’s contention, respondent had no duty to obtain such knowledge by conducting an audit of Budget pursuant to California Administrative Code, title 10, section 2248.8,
 
 [5]
 
 adopted under authority of Government Code section 11409 et seq. These provisions have no application to the facts alleged. If appellant class is entitled to a premium refund under Insurance Code sections 10214 and 10270.65, the duty to make such refund is imposed upon Budget by these statutes, and is not one “delegated” to Budget by respondent, the insurer.
 

 
 *811
 
 The premiums charged to and paid by appellant were approved by the Insurance Commissioner and, hence, were not excessive. (See Fin. Code, § 22458.1; Ins. Code, § 779.16.) The experience rating refunds paid by respondent to Budget were specifically excepted from the prohibition against unlawful rebates (Ins. Code, § 750), since they represented the “return by an insurer issuing policies on a participating plan, or any portion of the premium as a dividend after the expiration of the term covered by such policy.” (Ins. Code, § 763, subd. (a).) Moreover the policy forms, as well as the rates, were approved by the Insurance Commissioner.
 

 Appellant contends the allegations of conspiracy precluded entry of summary judgment. In support of this contention, appellant relies on
 
 Corwin
 
 v.
 
 Los Angeles Newspaper Service Bureau, Inc.
 
 (1971) 4 Cal.3d 842 [94 Cal.Rptr. 785, 484 P.2d 953], wherein it is stated (p. 852): “. . . the United States Supreme Court has observed that a summary judgment in favor of defendants is rarely warranted in antitrust cases. ‘We believe that summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot. It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised.’ ” The instant action is not an antitrust case. The unverified complaint merely avers that, pursuant to a common plan, respondent and Budget performed certain allegedly wrongful acts. As pointed out above, the credit insurance premiums charged to and collected from appellant were not excessive; the experience rating refunds paid by respondent to Budget were not unlawful rebates; respondent did not know what portion of the payments Budget was entitled to retain, based on Budget’s contributions and administrative expenses; and respondent was under no duty to acquire this knowledge before making the payments.
 

 Under the facts presented, respondent was entitled to judgment on the conspiracy theory, as well as on the other theories set forth in the complaint. “ ‘To constitute a conspiracy the purpose to be effected by it must be unlawful in its nature or in the means to be employed for its accomplishment, and, where the object in view is lawful and no unlawful means are used, there can be no civil action for conspiracy, even though damage results and even though defendants acted with malicious motives.’ ”
 
 (Riner
 
 v.
 
 Paskan
 
 (1963) 213 Cal.App.2d 499, 504 [28 Cal.Rptr. 846].)
 

 Since the supporting declarations were sufficient to sustain a judgment in respondent’s favor, the granting of summary judgment was proper unless appellant, by his opposing declarations, offered evidence sufficient
 
 *812
 
 to present a triable issue of fact.
 
 (Pettis
 
 v.
 
 General Tel. Co.
 
 (1967) 66 Cal.2d 503, 505 [58 Cal.Rptr. 316, 426 P.2d 884];
 
 R. D. Reeder Lathing Co.
 
 v.
 
 Allen
 
 (1967) 66 Cal.2d 373, 376-377 [57 Cal.Rptr. 841, 425 P.2d 785];
 
 State Medical Education Bd.
 
 v.
 
 Roberson
 
 (1970) 6 Cal.App.3d 493, 499 [86 Cal.Rptr. 258];
 
 Hatch
 
 v.
 
 Bush
 
 (1963) 215 Cal.App.2d 692, 702 [30 Cal.Rptr. 397, 13 A.L.R.3d 503];
 
 Snider
 
 v. Snider (1962) 200 Cal.App.2d 741, 748 [19 Cal.Rptr. 709];
 
 Cone
 
 v.
 
 Union Oil Co.
 
 (1954) 129 Cal.App.2d 558, 562 [277 P.2d 464].)
 

 In opposition to the motion, appellant submitted three declarations of his attorneys. These declarations set forth the following facts: at the request of Budget, respondent reinsured, with Transnational Insurance Company and Transnational Life Insurance Company, 100 percent of the risk under the group credit insurance policies issued by respondent to Budget; Transnational was a subsidiary of Budget.
 
 [6]
 
 The declarations also purported to set forth “facts” showing that the experience rating refunds alleged to have been paid by respondent to Budget actually were paid to Transnational, thereby diverting from Budget the funds to which appellant and his class were entitled.
 

 We note at the outset that the subject matter of the declarations was improper, for it was not directed to any of the issues raised by the pleadings and, in fact, was directly contrary to the allegation in appellant’s complaint that respondent had paid the refunds to Budget. Affidavits on a motion for summary judgment must be directed to the issues raised by the pleadings.
 
 (Family Service Agency of Santa Barbara
 
 v.
 
 Ames
 
 (1958) 166 Cal.App.2d 344, 348 [333 P.2d 152].) “The counteraffidavits filed in response to a defendant’s motion for summary judgment may not create issues outside the pleadings; are not a substitute for an amendment to the pleadings; and are an ineffective defense to the motion unless they ‘set forth facts showing that ... a good cause of action exists upon the merits.’”
 
 (Craig
 
 v.
 
 Earl
 
 (1961) 194 Cal.App.2d 652, 656 [15 Cal. Rptr. 207].)
 

 Aside from the improper subject matter of the opposing declarations, however, they were defective as to form and content. They did not comply with the requirements of Code of Civil Procedure section 437c, which provides in part: “The affidavit or affidavits in opposition to said motion shall be made by the plaintiff ... or by any other person having knowledge of the facts, and together shall set forth facts showing that . . .
 
 *813
 
 a good cause of action exists upon the merits. The facts stated in each affidavit shall be within the personal knowledge of the affiant, shall be set forth with particularity, and each affidavit shall show affirmatively that the affiant, if sworn as a witness, can testify competently thereto.” Virtually no facts were set forth (excepting the quotations previously mentioned; see fn. 6), much less a showing made that matters stated were within the personal knowledge of the declarants, and that they could testify competently thereto. The declarations consisted largely of arguments, plus extensive quotations from a “background study” on credit insurance allegedly made by the National Association of Insurance Commissioners and stating that in the opinion of the authors reinsurance of credit insurance risks by a company wholly owned by the creditor is a system developed to allow the creditor to retain as much profit as possible from the sale of credit insurance.
 

 The complete insufficiency of the opposing declarations placed the proceeding in the same posture as though no counteraffidavit had been filed.
 
 (Michelman
 
 v.
 
 Frye
 
 (1965) 238 Cal.App.2d 698, 702 [48 Cal. Rptr. 142].) Therefore, the trial court was entitled to accept as true the facts stated in respondent’s declarations
 
 (Goldstein
 
 v.
 
 Hoffman
 
 (1963) 213 Cal.App.2d 803, 811 [29 Cal.Rptr. 334];
 
 Atchison
 
 v.
 
 McGee
 
 (1956) 141 Cal.App.2d 515, 518 [296 P.2d 860]) and the court, applying the law to such uncontroverted facts, properly entered summary judgment in favor of respondent. (See
 
 Loma Portal Civic Club
 
 v.
 
 American Airlines, Inc.
 
 (1964) 61 Cal.2d 582, 588 [39 Cal.Rptr. 708, 394 P.2d 548];
 
 State Medical Education Bd.
 
 v.
 
 Roberson, supra,
 
 6 Cal.App.3d at pp. 499-500.)
 

 The judgment is affirmed.
 

 Jefferson, Acting P. J., and Kingsley, J., concurred.
 

 Appellant’s petition for a hearing by the Supreme Court was denied July 6, 1973. Tobriner, J., Mosk, J., and Sullivan, J., were of the opinion that the petition should be granted.
 

 [1]
 

 With the exception of 1959, no particular year was specified in the complaint.
 

 [2]
 

 Plaintiff alleged he was entitled to a premium refund of $8.08, and that the average refund due the other class members was less than $20.
 

 [3]
 

 So far as we are advised, the action remains pending against other named defendants.
 

 [4]
 

 Plaintiff’s complaint was filed September 15, 1970, so that claims arising over four years before then would be barred by a statute of limitations pleaded by defendants. Plaintiff raises no issue concerning this.
 

 [5]
 

 Section 2248.8 provides: “A. It shall be the responsibility of the insurer and all licensees of the Commissioner connected with the transaction of credit insurance to conduct an audit with respect to the first policy year and such reasonable audits and other investigations thereafter as may be necessary for the purpose of assuring compliance with these regulations and all applicable provisions of the Insurance Code, including the calculation of the proper premium and the transmittal thereof to the insurer, and payment of claims and refunds. B. The audit shall determine whether the creditor remits identifiable charges and premiums to the insurer on the same basis as it calculates and collects such charges and premiums from its debtors and that the creditor does not calculate the premium or charge on a different amount of indebtedness than is actually insured for the benefit of the debtor. C. The insurer does not by delegating the collections of premiums or the determination of refunds or the drawing of checks or drafts escape any of its responsibilities. The actions of the delegatee under such conditions will be deemed by the Commissioner to be the acts of the insurer.”
 

 [6]
 

 These recited facts were elicited by interrogatories submitted by appellant to respondent and Budget, and by a deposition of W. C. Klein, vice president in charge of respondent’s credit insurance division, taken by appellant.