[No. B005755. Second Dist., Div. One. Oct. 22, 1985.]

STEVEN LAWRENCE REID, Plaintiff and Appellant, v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
Defendant and Respondent.

560

COUNSEL

Phillip Feldman and Lane S. Kay for Plaintiff and Appellant.

Knapp, Petersen & Clarke, Peter J. Senuty, Ronald W. Hopkins and Cyril Czajkowskyj for Defendant and Respondent.

## OPINION

### HANSON (Thaxton), J.—

#### INTRODUCTION

Plaintiff Steven Lawrence Reid (plaintiff and/or Reid) appeals from a summary judgment in favor of defendant/respondent State Farm Mutual Automobile Insurance Company (State Farm). Plaintiff Reid, a permissive user of an automobile insured by State Farm, filed a complaint alleging breach of the implied covenant of good faith and fair dealing by State Farm for allowing destruction of an automobile which was involved in an accident while he was driving, thereby disenabling him from proving up allegations against other defendants. We affirm.

#### BACKGROUND

On July 31, 1980, at approximately 10 p.m., plaintiff Reid was involved in a one-car accident when the 1978 Honda Accord automobile he was

driving struck the point of a guardrail at the Laurel Canyon off ramp of the Ventura Freeway. The car was a total loss and plaintiff sustained serious personal injuries.

## PROCEDURAL HISTORY

On July 13, 1981, plaintiff filed a complaint containing four causes of action for strict products liability and negligence. The named defendants were certain manufacturers (Honda Manufacturing Company; American Honda Motor Company), the distributor and seller (Colonial Buick, Inc.), and repairer (Colonial Body Shop, Inc.; Bill Robertson & Sons, Inc.) of the 1978 Honda Accord automobile involved in the accident. (The first four causes of action do not seek relief against State Farm and the aforementioned codefendants are not parties to this appeal.)

On June 3, 1982, plaintiff filed a first amendment to his second amended complaint naming State Farm as a Doe defendant and added two additional causes of action as against State Farm; namely, a fifth cause of action alleging breach of covenant of good faith and fair dealing and a sixth cause of action alleging willful and intentional destruction of evidence (the Honda automobile) by State Farm which disenabled him proof as against the named defendants in the first four causes of action. (The fifth and sixth causes of action directed at State Farm are the subject of this appeal.)

On September 21, 1982, State Farm filed its answer which included a general denial and 12 separate affirmative defenses.

On December 14, 1983, State Farm filed "Notice of motion for summary judgment or, alternatively, for an order specifying issues without substantial controversy; memorandum of points and authorities; declarations of State Farm claim representatives Connie Rolls, Ben Matalon and Lee Hennen; Exhibits 'A' through 'E'."

On January 27, 1984, plaintiff filed his response to State Farm's motion for summary judgment along with a memorandum of points and authorities and a declaration by Robert A. Goldstein, plaintiff's attorney.

On March 9, 1984, the superior court granted defendant State Farm's motion for a summary judgment and the judgment was signed by the trial judge and entered on April 11, 1984.

On April 25, 1984, plaintiff timely filed his notice of appeal.

## State Farm's Moving Papers

State Farm's papers in support of its motion for summary judgment included the declarations, under penalty of perjury, of three State Farm claims representatives (Connie Rolls (Rolls),[1] Lee Hennen (Hennen),[2] and Ben Matalon (Matalon)),[3] who processed the claims of State Farm's named insured, Tara Galloway (Galloway), and her permissive user Reid, plaintiff herein. The moving papers also attached exhibits consisting of copies of documentation showing full settlement of all property damage claims by the named insured Galloway; transfer of the certificate of ownership of the

---

[1]The declaration of State Farm's claims representative Connie Rolls reflects the following facts: That on August 6, 1980, Rolls began investigation of plaintiff's July 31, 1980 accident and any claims arising out of the accident; that on August 7, 1980, State Farm inspected the 1978 Honda Accord involved in the accident and after determining that the automobile was a total loss, arranged for it to be picked up from the towing service where it had been taken following the accident and taken to the county salvage company; that on August 8, 1980, she (Rolls) met with the named insured, Galloway, in State Farm's offices to discuss and settle the property damage claim which resulted in a settlement of the claim as a total loss at fair market value and Galloway authorized the lienholder to transfer ownership to State Farm; that at no time during discussions with Gordon Tiller (Tiller), who was a passenger in the Honda with plaintiff Reid at the time of the accident, and with the named insured, Galloway, was there any indication that a vehicle defect might have caused the accident; that a copy of the California Highway Patrol report of the accident which she had requested was obtained on August 26, 1980, which indicated that the accident was due to a violation of Vehicle Code section 22107 (unsafe turning movements) and concluded that plaintiff Reid was inattentive, overshot the Laurel Canyon off ramp and the accident was caused by attempting an unsafe turn; and that based upon the foregoing investigation, she (Rolls) tentatively evaluated the cause of the accident as 100 percent attributable to State Farm's named insured's permissive user, Reid.

[2]The declaration of State Farm's claim representative, Lee Hennen, in substance, relates: That all claims concerning this matter were reassigned to him for handling on September 12, 1980; that on October 21, 1980, he negotiated a settlement of any and all claims by passenger Tiller against either State Farm's insured Galloway or her permissive user, Reid; that this settlement was intended to protect both Reid and Galloway from any potential actions by passenger Tiller; that on July 24, 1981, plaintiff Reid conferred with him (Hennen) for the purpose of State Farm's evaluation of his (Reid's) claim for medical payments coverage as a permissive user under the policy; that due to the fact that Reid's medical bills exceeded the maximum limits of medical payments coverage under the policy, State Farm promptly issued a draft to him (Reid) for the maximum amount of the medical payments coverage under the policy; and that at no time during his (Hennen's) handling of the claim file did anyone indicate to him that plaintiff Reid had a potential action against any person or entity resulting from a possible defect in the vehicle owned by named insured Galloway.

[3]The declaration of State Farm superintendent Ben Matalon in substance states: That State Farm's first indication that plaintiff Reid had any potential cause of action against any third party resulting from the automobile accident of July 31, 1980, occurred when various documents concerning the subject accident were subpoenaed by other parties to the litigation on or about January 1982; that State Farm's first indication that there was any potential necessity to preserve the vehicle owned by named insured Galloway was on March 8, 1982, when State Farm received correspondence from plaintiff's counsel demanding to know why the vehicle had not been preserved; and that State Farm conducted an investigation concerning the disposition of the Galloway vehicle and discovered that apparently it had been cut up for its parts by the salvage company to whom it had been sold sometime around the middle of October 1980.

damaged 1978 Honda Accord to State Farm; the California Highway Patrol (CHP) collision report; and the policy of insurance issued by State Farm.

In addition to the foregoing declarations by the three claims representatives of State Farm (Rolls, Hennen and Matalon), its moving papers point to pertinent portions of the transcripts of depositions of plaintiff Reid[4] and State Farm's named insured Galloway.[5]

---

[4]The deposition testimony of plaintiff Reid, taken March 4, 1983, indicates the following: That he (Reid) had noticed difficulties in the steering and brake systems of the Honda automobile when he drove it prior to the accident; that approximately one month after the accident of July 31, 1980, he was informed by Galloway that she had received payment from State Farm for her automobile because it was totaled and beyond repair; that within a month or two of the accident he was told by Galloway that she had gone to a towing service to recover personal effects from the Honda, and that she had received money from State Farm because the car had been totaled; that he (Reid) never asked her to call the junkyard to request that a hold be placed on the car although he had knowledge that cars in junk yards were available to be sold for parts; that he (Reid) became aware that Tiller, who was a passenger in the Honda, was making a claim against him sometime during his hospitalization following the accident but never called State Farm concerning this claim assuming that State Farm would take care of the claim; that sometime before Christmas of 1980, he (Reid) discussed with Galloway his concern that some mechanical problem with the Honda could have had something to do with the accident; that about July 1981, he (Reid) submitted a claim to State Farm for medical expenses that he had incurred pursuant to Galloway's policy with State Farm and that prior to that time, he had not discussed the accident with any State Farm personnel; that in July 1981, he (Reid) and Galloway went to the State Farm claims office in Burbank to discuss his claim for medical expense benefits under the Galloway policy at which time State Farm claims representative Hennen explained to him that he would need to present his medical bills; that during this interview he (Reid) made no mention of any concern that a mechanical defect might have caused or contributed to the accident; that a week or two later he returned to Mr. Hennen's office with his medical bills and received a check in the amount of $5,000, the policy limit of the medical payments coverage under Galloway's insurance policy; and that during this visit he made no mention of any concern that something mechanical might have caused or contributed to the accident.

Plaintiff Reid further testified that it did not come to his attention that the remains of the Honda automobile were no longer available until sometime during the fall of 1981, two or three months after he had hired an attorney, and had made no attempt to find out where the remains of the Honda were until that time; and that he personally had no knowledge or information to indicate that State Farm knew it was destroying physical evidence at the time it sold the car to the wrecking yard or that State Farm had any knowledge of any mechanical problems with the car at the time it sold the remains to the wrecking yard.

[5]The deposition testimony of State Farm's insured Tara Galloway, taken March 3, 1983, reflects that, although she had concerns about the operation of her vehicle within a few days after the accident, those concerns were never conveyed to any personnel at State Farm, nor did she at any time ask State Farm personnel to preserve the wrecked remains of her Honda automobile; and that she did not "formally" suspect that something was mechanically wrong with the Honda which might have caused the accident until a meeting with plaintiff Reid's attorney in July 1981.

The deposition testimony of Galloway further shows that following the accident she salvaged some personal items such as the stereo, spare tire, tools, etc. from her totaled automobile; that on August 8, 1980, she signed an authorization for pay off which gave her credit union the authorization to forward the certificate of ownership to the Honda automobile to State Farm; that she understood that she was transferring her interest in the Honda automobile to State Farm when she signed the relevant documents; that when she settled her

In accordance with the requirements of Code of Civil Procedure section 437c, subdivision (b), State Farm included a proposed "Separate Statement of Undisputed Material Facts." This statement essentially capsulizes the facts set forth in the declarations of State Farm's claims representatives Rolls, Hennen and Matalon and the deposition testimony of Galloway and plaintiff Reid.

### PLAINTIFF'S OPPOSITION PAPERS

Papers filed by plaintiff Reid, in opposition to State Farm's motion for summary judgment in addition to memorandum of points and authorities, contained only one declaration under penalty of perjury, that by Robert A. Goldstein,[6] one of the attorneys of record for plaintiff.

In plaintiff Reid's "Response to Defendant's Statement of Undisputed Facts," he essentially either conceded they were undisputed, admitted such testimony was made, or merely stated that he had no independent knowledge on which to dispute or verify such facts. (See *Keniston* v. *American Nat. Ins. Co.* (1973) 31 Cal.App.3d 803 [107 Cal.Rptr. 583].)

### UNDISPUTED FACTS

The aim of the summary judgment procedure is to discover, through the media of affidavits, depositions, admissions, etc., whether the parties possess evidence requiring the weighing procedures of a trial. (See *Sheffield* v. *Eli Lilly & Co.* (1983) 144 Cal.App.3d 583, 611 [192 Cal.Rptr. 870].)

---

total loss claim on August 8, 1980, she did not ask State Farm to preserve the remains of the vehicle nor did she indicate that mechanical problems might have caused the accident; and that when she accompanied plaintiff Reid to receive his medical payment from State Farm claim representative Hennen in July 1981 no mention was made of any possible mechanical defect of the vehicle which may have caused the accident.

At the time of the taking of her deposition, State Farm's named insured Galloway also identified the policy of insurance, with attachments, as the policy issued to her by State Farm. This policy, with attachments, was submitted with State Farm's moving papers for its motion for summary judgment.

[6]The declaration by Attorney Goldstein (five pages in length) consisted entirely of extracts from the deposition of Galloway, State Farm's named insured, conducted on March 3, 1983. The testimony extracted from the deposition discloses that a week after the accident Galloway visited the office of a Mr. Wolfe, State Farm insurance agent, and spoke to Mr. Wolfe's daughter. The substance of that conversation was that Galloway told Mr. Wolfe's daughter that it was a one-car accident and plaintiff Reid "had hit or slid into a . . . the divider point between the freeway and the off ramp" and that both Reid and Tiller, a passenger, were ejected from the vehicle and were seriously injured. In her deposition, witness Galloway admitted that she never mentioned those thoughts or concerns about a mechanical problem with the car having caused or contributed to the accident to anybody at State Farm; that she never asked anybody at State Farm to retain the remains of the vehicle because she didn't know that she could; and that no one at State Farm ever offered her the option of having the automobile examined before it was salvaged.

Here, plaintiff Reid had ample time to complete discovery and presented no evidence to contradict the undisputed facts proposed by State Farm. The following *undisputed* material facts are extracted and summarized in chronological order from State Farm's moving papers (see fns. 1, 2, 3, 4 and 5, *ante*):

| | |
|---|---|
| July 31, 1980 | Plaintiff Reid, while driving a 1978 Honda Accord with permission by owner State Farm's insured Galloway, struck the point of a guardrail at the Laurel Canyon off ramp of the Ventura Freeway. Reid and passenger Tiller were injured and the vehicle was a total loss. |
| August 6, 1980 | Claims representative Rolls of State Farm received assignment to investigate potential claims arising out of the accident and promptly began investigation. |
| August 7, 1980 | Claims representative Rolls inspected the vehicle and determined it to be a total loss. |
| August 8, 1980 | Rolls of State Farm settled the property damage claim of insured Galloway as a total loss. Galloway transferred her full title and executed an ownership release to State Farm on the vehicle. Galloway made no mention of her suspicions concerning possible vehicle defects. |
| August 9, 1980 | Rolls of State Farm interviewed passenger Tiller concerning his personal injury claim against Reid and Galloway. No mention of possible mechanical defect was made during this interview. |
| August 26, 1980 | The CHP report of accident received by Rolls of State Farm indicated that the accident was due to a violation of Vehicle Code section 22107 by Reid and also indicated that inattention of Reid was a cause of the accident. The CHP report contained the conclusion that Reid overshot the freeway off ramp, and that he caused the accident by making an unsafe turn. The report stated no alcohol was involved and that no mechanical defects were apparent. Rolls concluded that the accident was 100 percent Reid's fault. |
| September 1980 (approx.) | Plaintiff Reid was made aware of Galloway's total loss settlement and that the car was at a wrecking yard. |

| | |
|---|---|
| September 5, 1980 (approx.) | State Farm sold the wrecked car to Elite Auto Body. |
| October 17 or 21, 1980 | Claims representative Hennen of State Farm settled passenger Tiller's personal injury claim against Reid and Galloway. |
| October 10 or 11, 1980 (approx.) | Elite Auto Body cut up the car for parts. |
| July 24, 1981 | Plaintiff Reid and Galloway presented Reid's medical bills to Hennen of State Farm who issued a policy limit draft for $5,000. Neither Reid nor Galloway made mention of any mechanical failure or of any need to preserve the automobile. |
| January 1982 | Codefendants' subpoenaed State Farm's files which is the first notice by State Farm of Reid's claims against the codefendants. |
| March 8, 1982 | Reid's attorney inquired of status of vehicle. |
| March 12, 1982 | Claims representative Matalon of State Farm learned of the sale of the car to Elite Auto Body during September 1980 and its destruction one to one and one-half months thereafter. |

## ISSUE

The determinative issue on appeal is whether or not there exists triable issues of material fact which establish a duty on the part of State Farm to preserve the automobile involved in the accident for purposes of aiding permissive user Reid in his claim against third parties.[7]

The thrust of plaintiff's argument on appeal is that since only one car was involved in the accident and there was no evidence of alcohol use by the driver Reid, that a reasonable inference existed that the cause of the accident could have been due to a mechanical defect in the automobile, and therefore State Farm did owe a duty to him to preserve the vehicle. Plaintiff argues that, when establishing the element of duty on the part of State Farm, the foreseeability of the risk under such circumstances is a question of fact for the jury.

Additionally, plaintiff argues in his reply brief that "reasonable investigation" is an issue with regard to State Farm's "duty of care" and that

---

[7]Plaintiff Reid in his opening brief characterizes "the principle [sic] issue to be resolved on this appeal is whether or not the appellant [Reid] was owed a duty by respondent [State Farm] to either preserve the subject automobile, or make the subject automobile available to the appellant for inspection prior to its destruction."

State Farm's "standard operating procedures" under such circumstances raises questions of material fact, i.e. that the foreseeability of injury to plaintiff's prospective economic claims against others due to a failure to conduct a reasonable investigation and, if warranted, to preserve the vehicle, is a question for the trier of fact. (Citing *Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40, 46 [123 Cal.Rptr. 468, 539 P.2d 36].)

State Farm asserts 1) that there are no provisions in the policy which expressly or impliedly impose a duty on State Farm to aid plaintiff Reid's affirmative claims against third parties; and 2) that the implied covenant of good faith and fair dealing inherent in its insurance contract with Galloway (which extends to permissive user Reid) does not impose on State Farm a duty to anticipate and aid an insured or an insured's permissive user's affirmative claim against third parties where there is no mention from either the permissive user or the insured that any such potential claim might exist.

## Discussion

Code of Civil Procedure section 437c provides, in part, "(a) Any party may move for summary judgment in any action or proceeding if it is contended that the action has no merit or that there is no defense thereto. . . . (b) The motion shall be supported by affidavits, declarations, admissions, answers to interrogatories, depositions and matters of which judicial notice shall or may be taken. The supporting papers shall include a separate statement setting forth plainly and concisely all material facts which the moving party contends are undisputed. Each of the material facts stated shall be followed by a reference to the supporting evidence. . . . The opposition, where appropriate, shall consist of affidavits, declarations, admissions, answers to interrogatories, depositions and matters of which judicial notice shall or may be taken. The opposition papers shall include a separate statement which responds to each of the material facts contended by the moving party to be undisputed, indicating whether the opposing party agrees or disagrees that those facts are undisputed. The statement also shall set forth plainly and concisely any other material facts which the opposing party contends are disputed. Each material fact contended by the opposing party to be disputed shall be followed by a reference to the supporting evidence. . . . (c) The motion *shall be granted* if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the evidence set forth in the papers, except that to which objections have been made and sustained by the court, and all inferences reasonably deducible from such evidence, except summary judgment shall not be granted by the court based on inferences reasonably deducible from

such evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact." (Italics added.)

■ As stated in *Fosgate* v. *Gonzales* (1980) 107 Cal.App.3d 951, 954-955 [166 Cal.Rptr. 233], " ' "The aim of the [summary judgment] procedure is to discover, through the media of affidavits, whether the parties possess evidence requiring the weighing procedures of a trial. In examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion, . . ." ' (*Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.* (1971) 4 Cal.3d 842, 851-852 [94 Cal.Rptr. 785, 484 P.2d 953], quoting from *Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].) [¶] In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the *admissible evidence* set forth in the papers and all inferences reasonably deducible from such evidence, except summary judgment shall not be granted by the court based on inferences reasonably deducible from such evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact. (Italics added.) (Code Civ. Proc., § 437c) [¶] The remedy is designed to terminate an action promptly where the purported cause of action or defense is sham or otherwise wholly unfounded. . . . (4 Witkin, Cal. Procedure (2d ed. 1971) Proceedings Without Trial, § 199, p. 2844.) (*Bowden* v. *Robinson* (1977) 67 Cal.App.3d 705, p. 719 [136 Cal.Rptr. 871])." (Italics in original.)

■ In sum, "The purpose of the summary judgment procedure is *not to try the issues,* but merely to determine *whether there are issues to be tried.*" (4 Witkin, Cal. Procedure (2d ed. 1971) Proceedings Without Trial, § 191, p. 2840; italics in original.) "[I]ssue finding rather than issue determination is the pivot upon which the summary judgment law turns. [Citations.]" (*Walsh* v. *Walsh* (1941) 18 Cal.2d 439, 441-442 [116 P.2d 62].)

Defendant State Farm in its motion for summary judgment has the burden of negating every alternative theory of liability presented by the pleadings. (See *Bell* v. *Industrial Vangas, Inc.* (1981) 30 Cal.3d 268 [179 Cal.Rptr. 30, 637 P.2d 266].) Plaintiff Reid's opposition papers cannot rely on pleadings, even if verified, but must make an independent showing that he has sufficient proof of matters alleged to raise material issues of fact. (See *Cullincini* v. *Deming* (1975) 53 Cal.App.3d 908 [126 Cal.Rptr. 427].)

■ Moreover, "[A]n issue which is abstractly one of fact may be resolved by summary judgment if the moving party's declarations fully estab-

lish the claim or defense and his opponent's declarations fail to rebut it. [Citation.] To put the matter otherwise, the issue of fact becomes one 'of law' and loses its 'triable' character if the undisputed facts leave no room for a reasonable difference of opinion. (See, e.g. *Schrimsher* v. *Bryson, supra,* 58 Cal.App.3d at p. 664.)" (*Terry* v. *Atlantic Richfield Co.* (1977) 72 Cal.App.3d 962, 967 [140 Cal.Rptr. 510].)

We examine the pleadings and the undisputed facts to determine whether State Farm owed a duty to plaintiff Reid to preserve the totaled-out Honda automobile owned by the named insured Galloway which the permissive user (plaintiff Reid) was driving at the time of the accident.

## THE SIXTH CAUSE OF ACTION

We summarily dispose of the existence of any material issue of fact insofar as the allegation denominated as one for "willful and intentional destruction of evidence [the 1978 Honda] disenabling plaintiff's cause of action" against the other named defendants (the sixth cause of action). In plaintiff Reid's opening brief on appeal, he concedes that there is no evidence of any intentional destruction of the Honda automobile on the part of State Farm and "does not dispute the superior court's ruling dated March 9, 1984 in which the superior court concluded that there was no evidence of intentional destruction of the subject automobile by the defendant/respondent State Farm."

## THE FIFTH CAUSE OF ACTION

We turn to the only remaining cause of action against State Farm, the fifth cause of action, the gravamen of which is a claim that State Farm breached the implied covenant of good faith and fair dealing by reason of allowing the destruction of the 1978 Honda Accord automobile after the accident, thereby disenabling plaintiff to pursue his first four causes of action against the other named defendants. We hold as a matter of law that State Farm did not breach the implied covenant of good faith and fair dealing. Our reasoning follows:

*First,* California decisional law involving the duties of insurance carriers encompassed within the implied covenant of good faith and fair dealing inherent in contracts of insurance pertain to insurance carriers not taking steps which will injure the right of the insured to receive the benefits of the contracting agreement. In instances where liability insurance is involved, such cases primarily imply a duty on an insurance company to defend and protect an insured by settling the claims of third parties against the insured, particularly where there was great risk of recovery beyond the

policy limits. (See for example, *Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654 [328 P.2d 198, 68 A.L.R.2d 883]; *Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425 [58 Cal.Rptr. 13, 426 P.2d 173]; *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566 [108 Cal.Rptr. 480, 510 P.2d 1032]; *Murphy* v. *Allstate Ins. Co.* (1976) 17 Cal.3d 937 [132 Cal.Rptr. 424, 553 P.2d 584]; *Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809 [169 Cal.Rptr. 691, 620 P.2d 141]; *Commercial Union Assurance Companies* v. *Safeway Stores, Inc.* (1980) 26 Cal.3d 912 [164 Cal.Rptr. 709, 610 P.2d 1038]; *Austero* v. *National Cas. Co.* (1978) 84 Cal.App.3d 1 [148 Cal.Rptr. 653], disapproved on other grounds in *Egan* v. *Mutual of Omaha Ins. Co.*, *supra*, 24 Cal.3d at p. 824, fn. 7 [169 Cal.Rptr. 691, 620 P.2d 141]; *Liberty Mutual Insurance Co.* v. *Altfillisch Constr. Co.* (1977) 70 Cal.App.3d 789 [139 Cal.Rptr. 91]; *Gibson* v. *Government Employees Ins. Co.* (1984) 162 Cal.App.3d 441 [208 Cal.Rptr. 511].)

In *Comunale* v. *Traders & General Ins. Co.*, *supra*, 50 Cal.2d at page 658, the California Supreme Court in respect to the implied covenant of good faith and fair dealing said: "There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other *to receive the benefits of the agreement.* [Citation.] This principle is applicable to policies of insurance. [Citation.]" (Italics added.)

■ *Second,* the question of the existence of a duty owed to Reid by State Farm under the undisputed facts previously listed is a question of law to be decided by the court. In *Stout* v. *City of Porterville* (1983) 148 Cal.App.3d 937 [196 Cal.Rptr. 301], the court stated that the question of the existence of a duty under the "special relationship" doctrine is entirely a question of law which must be determined only by the court: "The existence of a duty 'is entirely a question of law, to be determined by reference to the body of statutes, rules, principles and precedents which make up the law; and it must be determined only by the court.' (Prosser, Torts (4th ed. 1971) § 37, p. 206.)" (*Id.*, at p. 941.)

■ *Third,* State Farm's motion for summary judgment in the trial court was properly supported by declarations, deposition testimony and exhibits which were all keyed to the underlying pleadings. Plaintiff Reid's separate statement of disputed facts fails to reference any supporting evidence to contradict the undisputed material facts submitted by State Farm as required by Code of Civil Procedure section 437c. This failure alone justifies the granting of State Farm's motion for summary judgment. (See *Keniston* v. *American Nat. Ins. Co.*, *supra*, 31 Cal.App.3d 803.)

■ *Fourth,* plaintiff Reid's argument that the fact that it was a one-car accident with no evidence of alcohol use raises a triable issue of material

fact (i.e., the foreseeability issue as to duty owed by State Farm to preserve the vehicle) is without merit.

Plaintiff's reliance on *Maxwell* v. *Colburn* (1980) 105 Cal.App.3d 180 [163 Cal.Rptr. 912] in this respect is misplaced. In *Maxwell,* the court overturned the granting of a summary judgment in an automobile accident where the defendant had struck two pedestrians who were crossing a road. Defendant argued in the court below that there was no independent sign of any negligence on his part. The court held that a rational inference of negligence existed under the circumstances, stating: "A rational inference of negligence arises under the particular circumstances of this case from the fact that respondent was unable to stop his vehicle in time to avoid hitting appellants." (*Id.,* at p. 185.)

The *Maxwell* rationale is inapposite to the circumstances of this case. As set forth more fully, *infra,* in the issues concerning the "special relationship" doctrine, the possibility of loss to the plaintiff herein resulting from the sale and subsequent destruction of the automobile was not actually or reasonably foreseeable, and was so remote that no legal duty on the part of State Farm arose. The facts certainly do not suggest a rational inference of negligence on State Farm's part.

Reid's reliance on *Weirum* v. *RKO General, Inc., supra,* 15 Cal.3d 40, is similarly misplaced. Reid cites this case for the proposition that a question of fact is raised as to whether State Farm reasonably investigated the cause of the accident prior to its decision to dispose of the vehicle. *Weirum* is factually distinguishable. In *Weirum,* the defendants actively encouraged their radio audience to engage in high speed driving in order to be the first listener to arrive at a specified location. A foreseeable risk of such conduct is severe injury or death. In the case at bench, State Farm merely followed its standard business procedure of disposing of a wrecked automobile when their investigation does not reveal any mechanical defects and there is no request by the insured to preserve the vehicle. As noted below, there can be no reasonable difference of opinion regarding whether State Farm breached its duty of good faith and fair dealing.

■■■ *Fifth,* there is no "special relationship" between State Farm and plaintiff Reid under the facts of this case which would form a legal basis for the imposition of a duty upon State Farm to take affirmative action to preserve evidence or to conduct investigations concerning any potential claims by Reid against third parties.

■■■ The question of whether sufficient facts are alleged to establish such a duty is a question of law for the court. In *Beauchamp* v. *Los Gatos Golf*

*Course* (1969) 273 Cal.App.2d 20, 32 [77 Cal.Rptr. 914], the court stated: " 'It is an elementary principle that an indispensible factor to liability founded upon negligence is the existence of a duty of care owed by the alleged wrongdoer to the person injured, or to a class of which he is a member.' [Citations.] And 'the question whether the facts disclose a duty owed to the plaintiff by the defendant is in the first instance a question of law for the court.' [Citations.]"

Historically, the "special relationship" doctrine developed in order to impose a duty on parties who had actual and specific knowledge of an unreasonable risk of physical harm to another to take steps to protect a helpless victim or to warn an unknowing victim of such harm. The doctrine was never intended to impose liability where the nature of any damage was as unforeseeable or remote as that of the case at bench.

In *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166], the court held that a psychotherapist who had in fact determined that a patient might well carry out threats to murder a specifically identified unknowing victim, potentially had a duty to warn the unknowing victim and protect her from that unreasonable danger.

The *Tarasoff* court stated that the duty to protect the unknowing party would arise only if the defendant bore some special relationship to the dangerous person or to the potential victim. The court stated: "[W]hen the avoidance of foreseeable harm requires a defendant to control the conduct of another person, or to warn of such conduct, the common law has traditionally imposed liability only if defendant bears some special relationship to the dangerous person or to the potential victim." (*Id.,* at p. 435.)

The essence of the duty in *Tarasoff* was that to exercise reasonable care to protect a specific and foreseeable victim from an unreasonable violent harm. The court stated: "[O]nce a therapist does in fact determine, or under applicable professional standards reasonably should have determined, that a patient poses a serious danger of violence to others, he bears a duty to exercise reasonable care to protect the foreseeable victim of that danger." (*Id.,* at p. 439.)

The *Tarasoff* court outlined the primary considerations which should be balanced in order to determine if a party should be held liable for a danger not caused by his own conduct under a "special relationship" theory. The court in *Tarasoff* stated: " " "[W]henever one person is by circumstances placed in such a position with regard to another . . . that if he did not use ordinary care and skill in his own conduct . . . he would cause danger of

injury to the person or property of the other, a duty arises to use ordinary care and skill to avoid such danger."'' [¶] We depart from 'this fundamental principle' only upon the 'balancing of a number of considerations'; major ones 'are the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost and prevalence of insurance for the risk involved.'" (*Id.*, at p. 434; fn. omitted.)

The court in *Tarasoff* went on to state that "[t]he most important of these considerations in establishing duty is foreseeability. As a general principle, a 'defendant owes a duty of care to all persons who are foreseeably endangered by his conduct, with respect to all risks which make the conduct unreasonably dangerous.' [Citations.]" (*Id.*, at pp. 434-435.)

In *Shelton* v. *City of Westminster* (1982) 138 Cal.App.3d 610 [188 Cal.Rptr. 205], the court emphasized that the first three factors enunciated in *Tarasoff* were central considerations in determining whether a "special relationship" duty existed. The court stated: "Foreseeability, certainty of injury and closeness of the conduct and the injury can be readily recognized in cases where *duty* has been found." (*Id.*, at p. 617; italics in original.)

Plaintiff Reid's reliance on the cases of *Mann* v. *State of California* (1977) 70 Cal.App.3d 773 [139 Cal.Rptr. 82] and *Clemente* v. *State of California* (1980) 101 Cal.App.3d 374 [161 Cal.Rptr. 799] as authority for a duty owed to him by State Farm is misplaced since these cases are markedly distinguishable.

In *Mann* v. *State of California, supra,* 70 Cal.App.3d 773, the court held that a police officer who undertook the affirmative act of investigating a traffic situation involving stalled vehicles on a highway could be held liable for an ensuing accident where the patrol officer left the scene of the accident leaving the stranded motorists in an exposed position involving unreasonable danger of foreseeable physical harm. The *Mann* court stated: "[T]he foreseeable risk of harm to those people may have been unreasonable and, if so, Officer Lane, as a state traffic officer who had acquainted himself with their plight, had a duty to exercise ordinary care to protect them from such risk [citation]." (*Id.*, at p. 780.) In *Mann,* the potential harm of leaving the stranded motorists unprotected was immediate and should have been directly foreseeable to the police officer who left the stranded motorists in an exposed position without placing warning signs or flares.

Here, in sharp contrast, State Farm had no actual knowledge of any unreasonable risk of harm to Reid by disposing of the totaled Honda in the ordinary course of processing the claims. No one told State Farm that a defect in the car may have caused the accident; State Farm's own investigation disclosed that the accident was 100 percent Reid's fault, and State Farm acted upon its investigation by settling the claim of passenger Tiller against Reid. When State Farm sold the wreckage of the car, it simply did not know of any potential claims by or risk of harm to Reid.

In *Clemente* v. *State of California, supra,* 101 Cal.App.3d 374, the plaintiff had been run over by a motorcyclist. A highway patrolman came to the scene and began his investigation. The patrolman questioned witnesses, including the motorcyclist, but failed to obtain his identification. The patrolman radioed the dispatcher and requested an ambulance, and local police, and then left the scene. The motorcyclist disappeared and was never found, effectively precluding the motorist from suing the motorcyclist for damages. The *Clemente* court, after determining that governmental immunity did not apply, stated the nature of plaintiff's claim and limited liability to circumstances where a special relationship existed between the injured party and the officer: "The injury plaintiff alleged in his third amended complaint was the virtual destruction of any opportunity on his part to obtain compensation for his physical injuries from the apparent tortfeasor, the motorcyclist, by reason of the officer's negligence in the conduct of his investigation of the traffic accident in failing to obtain the motorcyclist's identity. [¶] We think that possible liability of the officer and the state in this case is indicated by our reasoning in the aforementioned decision of this panel, *Mann* v. *State of California, supra,* 70 Cal.App.3d 773. . . . There, we also said that a special relationship in tort law obtained between the California highway patrol officer there involved and the stranded motorists by reason of their dependence on his expertise. [Citation.] Here, the completely disabled and apparently incompetent plaintiff was likewise completely dependent on Officer Loxsom following the traffic accident." (*Clemente, supra,* 101 Cal.App.3d at pp. 379-380.)

In *Clemente,* it is important to note that the motorcyclist who caused the injury had disappeared and his identity was never ascertained. In the instant case, Reid is actively suing on products liability theories all the entities allegedly involved in manufacturing, distributing, selling and repairing the vehicle, which he alleges caused his injuries. Moreover, in *Clemente,* the duty to ascertain the identity of the tortfeasor arose from the special relationship which the court imposes upon officers who attend victims of traffic accidents and undertake investigation. Here, the only possible special relationship between Reid and State Farm arises from his permissive use of the vehicle which State Farm insured. Since the policy of insurance imposes no

contractual obligation concerning the protection of Reid's claims against third parties, but rather is to protect Reid's interests arising from injuries he causes to others, Reid could have no reasonable expectations that State Farm will preserve and protect his claims against third parties.

The *Clemente* decision, which is relied upon so strongly by the plaintiff, was questioned and disapproved of in part in the subsequent case of *Williams* v. *State of California* (1983) 34 Cal.3d 18, 28, footnote 9 [192 Cal.Rptr. 233, 664 P.2d 137].[8] The facts of *Williams* are much more analogous to the instant case than that of *Clemente,* although the peril in *Williams,* where no duty was found, was much more foreseeable and less remote than the peril in the present case.

In *Williams,* the plaintiff's automobile had been struck by a part of a vehicle. The plaintiff alleged that the investigating police officers were negligent in not testing the brake drum which struck her car, failing to secure identification of witnesses, and failing to attempt investigation. Some of the plaintiff's allegations in *Williams* were stated by the court as follows:

"Turning to the case before us, the sum and substance of plaintiff's complaint is that unnamed agents of the state 'arrived within minutes of the accident and assumed the responsibility of investigating the accident.' The alleged negligence is nonfeasance—failure to test for the heat of the object which struck her, failure to secure identification of witnesses, and failure to attempt investigation or pursuit of the owner or occupant of the truck whose brake drum had caused her injuries. There are no allegations that the officers assured her, either expressly or impliedly, that they would do any of the acts she faults them for not doing, no allegations that they conducted themselves in such a manner as to warrant reliance upon them to do the acts which plaintiff alleges they should have done nor, finally, is there any hint that they prevented plaintiff from conducting an investigation of her own." (*Id.,* at p. 27; fn. omitted.)

The court in *Williams* went on to state that under those circumstances, the officers assumed no responsibility to protect the plaintiff's prospects for recovery in civil litigation. The court stated: "Applying the general principles of law represented in the decisions reviewed above, from *McCorkle* to *Mann,* we conclude that plaintiff has not stated a cause of action in that she fails to establish a duty of care owed by defendant state. The officers

---

[8]Despite having disapproved of the original *Clemente* decision, the Supreme Court nevertheless affirmed the judgment obtained in the trial that followed the appellate court's reversal of the demurrer. (*Clemente* v. *State of California* (1985) 40 Cal.3d 202 [219 Cal.Rptr. 415, 707 P.2d 818].) However, this was based on the doctrine of law of the case and not a reconsideration of the scope of the original *Clemente* decision.

did not create the peril in which plaintiff found herself; they took no affirmative action which contributed to, increased, or changed the risk which would have otherwise existed; there is no indication that they voluntarily assumed any responsibility to protect plaintiff's prospects for recovery by civil litigation; and there are no allegations of the requisite factors to a finding of special relationship, namely detrimental reliance by the plaintiff on the officers' conduct, statements made by them which induced a false sense of security and thereby worsened her position." (*Id.*, at pp. 27-28; fn. omitted.)

The Supreme Court's reasoning in *Williams* is equally applicable here. State Farm did not cause the peril in which Reid found himself resulting from his own negligent operation of Galloway's vehicle. Reid can point to no voluntary assumption by State Farm of any responsibility to protect his claims against the codefendants. Nor can Reid establish that he detrimentally relied upon State Farm to investigate and preserve his claims against third parties, so as to give rise to a special duty. Neither the insurance policy nor communications between the parties, nor the information uncovered during State Farm's investigation of the insurance claims arising from the accident imposed any special relationship or duty to preserve the vehicle. For these reasons, Reid's arguments regarding a cause of action for the negligent injury to his prospective economic advantage must also fail.

In sum, an analysis of the policy considerations enunciated in *Tarasoff, Mann* and *Clemente* indicate that no special relationship existed between State Farm and plaintiff Reid which would have imposed upon State Farm the affirmative duty to preserve as evidence the 1978 Honda for Reid's unknown, potential and inchoate causes of action against third parties.

It is undisputed in the case at bench that no employee of State Farm had any knowledge of any potential use of the involved automobile as evidence in a potential lawsuit by plaintiff Reid against third parties until they were requested to inquire as to the disposition of the vehicle by the plaintiff's counsel more than one and one-half years after the accident. Undisputed fact No. 20 reads as follows: "At no time prior to early 1982 did plaintiff Reid, or State Farm insured Galloway, or anyone else, inform anyone at State Farm that State Farm's sale of the remains of the vehicle would allegedly destroy any physical evidence which would disenable plaintiff Reid from proving actions against third parties."

Additionally, Reid himself made no attempt to find out where the remains of the vehicle were until at least the fall of 1981, even though he knew within one or two months after the accident that the car had been taken to

a junkyard, and it was within his experience that cars which were taken to junkyards might be sold for their parts.

Furthermore, State Farm in its investigation had obtained a copy of the CHP report concerning the accident. The report indicated that the accident was due to a violation of Vehicle Code section 22107 by plaintiff Reid and also indicated that the inattention of Reid was a cause of the accident, and concluded that Reid had overshot the freeway off ramp and that he caused the accident by making an unsafe turn. The CHP report also specifically indicated that there were no defects apparent to the automobile.

Also relevant to this discussion is the recent case *Velasco* v. *Commercial Bldg. Maintenance Co.* (1985) 169 Cal.App.3d 874 [215 Cal.Rptr. 504]. In *Velasco,* a janitor cleaning an attorney's office disposed of the shattered bottle that injured the attorney's clients. The bottle fragments were left in an unmarked bag on the attorney's desk. After recognizing "that a cause of action may be stated for negligent destruction of evidence needed for prospective civil litigation" (*id.,* at p. 877), we concluded that the harm to the plaintiff was not foreseeable *as a matter of law* since there could be no reasonable difference of opinion. (*Id.,* at p. 878.)

We note, as did the trial court,[9] that *Smith* v. *Superior Court* (1984) 151 Cal.App.3d 491 [198 Cal.Rptr. 829], is inapplicable to the case at bench since it is undisputed that State Farm never promised to preserve the automobile.

In *Smith,* plaintiffs brought an action against an automobile dealer to recover for personal injuries sustained by plaintiff wife when her car was struck by a wheel that came off a van that had been sold by the dealer. Although the dealer agreed with plaintiffs' counsel to maintain certain automotive parts, pending further investigation, the dealer destroyed or lost such evidence, making it impossible for plaintiffs' experts to inspect and

---

[9]The trial court's minute order of March 9, 1984 on State Farm's motion for summary judgment stated: "The police (CHP) accident report discussed the cause of the accident. It is not evidence of such cause, and the hearsay objection is not well taken. It is evidence of the information communicated to State Farm leading to the sale of the remains of the car from scrap. State Farm had a duty to plaintiff since he was an 'insured' under the policy. [¶] Although the fifth and sixth counts are both grounded in intentional misconduct, no evidence of intentional destruction is offered by plaintiff. Based on the fact that both counsel argue negligence authorities and principles, the court has also considered the possibility of the case being tried on a negligence theory and has concluded plaintiff has not sustained his burden of proving breach of duty as to him or foreseeability of loss. GRANT MOTION FOR SUMMARY JUDGMENT. Counsel to prepare judgment. *Smith* v. *Superior Court* does not apply because no claim is made and no evidence offered of any promise to preserve the evidence. Plaintiff did not submit any evidence that the accident might have been caused by mechanical failure."

test those parts to pinpoint the cause of the failure of the wheel assembly on the van. Plaintiffs' complaint contained a cause of action for intentional spoliation of evidence. The cause of action alleged that the dealer had intentionally lost or destroyed the evidence in question, and that the loss of such evidence significantly prejudiced plaintiffs' case. The trial court sustained a demurrer to the cause of action for intentional spoliation of evidence without leave to amend, and plaintiffs petitioned the Court of Appeal for a writ of mandate.

The Court of Appeal granted the writ and directed the trial court to vacate its order sustaining the demurrer and to make a new and different order overruling that demurrer. The court held that, while intentional spoliation of evidence has not been recognized as a tort heretofore, a prospective civil action in a products liability case is a valuable "probable expectancy" that the court must protect from the kind of interference alleged by plaintiffs, and accordingly that plaintiffs had stated a cause of action against the dealer for intentional spoliation of evidence.

■ Although, as previously noted, declarations of a party [here Reid] resisting a summary judgment are to be liberally construed in his favor, a summary judgment is proper if the declarations of the moving party [here State Farm] state facts which justify a judgment in its favor and the counterdeclarations do not supply evidence to create a triable issue of fact. (See *Corwin* v. *Los Angeles Newspaper Service Bureau, Inc., supra,* 4 Cal.3d 842; *Wood* v. *Brown* (1974) 39 Cal.App.3d 232, 239 [114 Cal.Rptr. 63].)

■ We conclude that the declarations in support of State Farm's summary judgment motion established prima facie that its handling of the claims in the instant case and its investigation procedures were fair and reasonable and completely negated plaintiff Reid's claim of a breach of good faith and fair dealing. Plaintiff Reid's counterdeclarations failed to produce any facts which might reasonably cause differences of opinion over State Farm's compliance with its duties and responsibilities under the contract of insurance.

In the case at bench, plaintiff Reid has not pointed to any provision in the contract of insurance or cited any legal authority whatsoever which imposes a duty on State Farm to take affirmative action to investigate possible causes of action of the insured [here permissive user Reid] against other third parties or to preserve as evidence wrecked motor vehicles absent a specific request from the insured to do so.

Here, the record shows that State Farm promptly investigated the accident; paid named insured Galloway's property damage claim as a total loss;

settled passenger Tiller's claim against Reid and Galloway; and paid Reid the policy limit on medical coverage. It is uncontradicted that at no time during the handling of the claims, which involved personal conferences with permissive user Reid, named insured Galloway, or passenger Tiller, was any mention ever made to the possibility that a mechanical defect in the Honda vehicle may have contributed to the accident. Superimposed upon this absence of any request by Reid, Galloway or Tiller to preserve the totaled vehicle is the CHP report which concluded that plaintiff Reid, through inattention, overshot the Laurel Canyon off ramp and, in trying to still make the off ramp, collided with the guardrail.

Accordingly, we hold as a matter of law that, in the absence of a specific request by either Galloway or Reid, State Farm had no duty to preserve the 1978 Honda vehicle for plaintiff Reid. The undisputed facts of this case leave no room for a reasonable difference of opinion as to whether or not State Farm breached its duty of good faith and fair dealing. It did not. In the absence of an issue of fact which was triable, the summary judgment was properly granted.

#### Disposition

The judgment is affirmed.

Spencer, P. J., and Lucas, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 30, 1985.